[No. 13913.   Department One. — February 6, 1892.]

## JOHN SHEEHY, RESPONDENT, v. EDWIN MILES ET AL., APPELLANTS.

VENDOR AND PURCHASER — CONTRACT OF SALE — COVENANT FOR PERFECT TITLE. — In order to fully satisfy a covenant for a perfect title, the title must be good and valid beyond all reasonable doubt, and should be free from litigation, palpable defects, and grave doubts, should consist of both legal and equitable titles, and should be fairly deducible of record.

ID. — EVIDENCE ALIUNDE THE RECORD. — A purchaser of land under a contract for a perfect title is not required to examine into evidence *aliunde* the record, or to rely upon the oral statement of the vendor that he has a good title to the land.

ID. — RECITALS IN RECORD OF HOMESTEAD — EXISTENCE OF COMMUNITY PROPERTY — PROBATE HOMESTEAD — CLAIMS OF MINORS. — Where the validity of the title to land depends on the question as to whether or not a homestead confers absolute title upon the survivor by reason of having been declared upon community property, and all the purchaser knows about the *status* of the title is from the recorded homestead, the recitals in which are not binding upon third parties, he need not accept the title, where it is conceded that if the homestead was not upon community property, or was defective, an undivided part of the land belongs to minor children.

HOMESTEAD — CONSTRUCTION OF CODE — AMENDMENT OF 1880 — RIGHTS OF WIDOW AND CHILDREN — TENANCY IN COMMON. — Under section 1468 of the Code of Civil Procedure as amended in April, 1880, providing

that property set apart for the use of the family shall be for the benefit of the several parties, as provided in section 1465 of the same code, the widow and minor children of a decedent took equal shares in the property as tenants in common.

ID. — PROBATE HOMESTEAD — EFFECT OF ORDER — VESTED RIGHTS. — A probate homestead is to be set apart in pursuance of the statute in force at the time the order setting it apart is made, and the interest therein which the widow and the surviving children will take is to be determined by the same statute; and an order of the probate court made in November, 1882, setting aside property as a homestead, under section 1468 of the Code of Civil Procedure as it existed in 1880, is not retroactive, and does not deprive the widow of any prior vested rights.

ID. — HOMESTEAD UPON COMMUNITY PROPERTY — RIGHT OF SURVIVOR — POWER OF PROBATE COURT. — Upon the death of a spouse, the community property upon which a homestead exists vests absolutely in the survivor, and the probate court has no power to make a decree setting apart the property for the use of the family; and the effect of such a decree, no matter how broad its language, is simply to take the property out of administration.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*F. J. Castelhun*, for Appellants.

As the court found that the premises were community property, and that Styles filed his declaration of homestead while residing thereon with his family, it is settled law that on his death his widow became sole owner. (Code Civ. Proc., secs. 1265, 1474; *Rich* v. *Tubbs*, 41 Cal. 34; *Estate of Boland*, 43 Cal. 640; *Estate of Headen*, 52 Cal. 294; *Herrold* v. *Reen*, 58 Cal. 443; *Watson* v. *His Creditors*, 58 Cal. 556; *Levins* v. *Rovegno*, 71 Cal. 273; *Tyrrell* v. *Baldwin*, 78 Cal. 470; *Bollinger* v. *Manning*, 79 Cal. 7; *Estate of Ackerman*, 80 Cal. 208; *Estate of Gilmore*, 81 Cal. 240; *Mechanics' Building and Loan Ass'n* v. *King*, 83 Cal. 440.) The court had no power to make the decree setting apart the homestead for the use of the family. The effect of such a decree, no matter how broad its language, is simply to take the property out of administration. (*Watson* v. *His Creditors*, 58 Cal. 556; *Tyrrell* v. *Baldwin*, 78 Cal. 470; *Estate of Gilmore*, 81 Cal. 240; *Estate of Ackerman*, 80 Cal.

208; *Bollinger* v. *Manning*, 79 Cal. 7.) The conten-
tion that the decree gave the minors a three-fourths in-
terest in the property, and that the widow became the
owner of only three fourths of the land, the remaining
one fourth being still outstanding in the minors be-
cause of their interest having been inventoried and sold
as being one half, cannot be sustained, as the guardian's
sale was made on the theory that the minors' entire inter-
est in the property was being sold (*Fitch* v. *Miller*, 20 Cal.
352; *Dodge* v. *Walley*, 22 Cal. 228; *Wilcoxson* v. *Sprague*,
51 Cal. 640; *McLennan* v. *McDonnell*, 78 Cal. 273); and the
minors, if they had any interest in the property, were
owners of only one half thereof, as, the father having
died in 1879, one half of the land vested in his widow
and one half in the children (Civ. Code, sec. 1402; *Es-
tate of Gilmore*, 81 Cal. 243), subject to the right of the
court to set it apart for the use of his family, under sec-
tions 1465 and 1468 of the Code of Civil Procedure as
they stood at the time of his death. As it is admitted
that, prior to the amendment of April 16, 1880, to sec-
tion 1468 of the Code of Civil Procedure, one half of a
probate homestead vested in the widow and one half
in the minors, even if the amendment had the effect
claimed for it by the respondent, it cannot be permitted
to operate retroactively, and deprive persons of their
vested rights. Section 1468 of the Code of Civil Pro-
cedure as it stood at the death of Styles was repealed
after Styles's widow had become the owner of one
half the lot, and before the amendment of 1880 was
adopted, and therefore the latter, in so far as it attempted
to deprive her of any part of her fee in the lot, was a
mere nullity. (*Stevenson's Heirs* v. *Sullivant*, 5 Wheat.
212; *People* v. *Rogers*, 13 Cal. 160; *Brenham* v. *Story*, 39
Cal. 179; *Greer* v. *Blanchar*, 40 Cal. 194; *Herrold* v. *Reen*,
58 Cal. 443; *Estate of Gilmore*, 81 Cal. 243; 1 Kent's
Com. 455.) No part of the code is retroactive, unless
expressly so declared. (Code Civ. Proc., sec. 3; *Sharp* v.
*Blankenship*, 59 Cal. 288.) Amendments to the code

receive the same construction. (*Central Pacific R. R. Co.* v. *Shackelford,* 63 Cal. 261.)

*Sawyer & Burnett,* for Respondent.

Under the condition of the agreement of sale and purchase, the title must have been one that was good and valid beyond all reasonable doubt. (*Turner* v. *McDonald,* 76 Cal. 177; *Richmond* v. *Gray,* 3 Allen, 27; *Sturtevant* v. *Jaques,* 14 Allen, 526; 3 Parsons on Contracts, 6th ed., 379.) The decree setting apart the premises in question upon the petition of the widow, being an appealable order (Code Civ. Proc., sec. 963), and not having been appealed from, is final and conclusive. (Freeman on Judgments, sec. 135; *Parnell* v. *Hahn,* 61 Cal. 131; *Gruwell* v. *Seybolt,* 82 Cal. 7.) The interests which the widow and children take in the homestead are to be determined by the statute in force at the time when the order is made, as they take under the decree, not under the declaration of homestead. (*Sulzberger* v. *Sulzberger,* 50 Cal. 385.) The rights to the homestead set apart by the court do not spring from descent or common property, but from the adjudication by the probate department, and therefore the rights of the "parties" mentioned in section 1468 of the Code of Civil Procedure were settled by the decree, and not by succession. (*Sulzberger* v. *Sulzberger,* 50 Cal. 385; *Estate of Moore,* 57 Cal. 442–444.) The provisions of sections 1465 and 1468 of the Code of Civil Procedure as amended April 16, 1880, were in force at the time when the order was made. Section 1468 as it stood at the different times had different meanings. The amendments were really repeals. (Endlich on Interpretation of Statutes, secs. 196, 2647, and cases cited.) The decree set the property apart to the family, which must mean that each member of the "family" takes an equal share, thus making them tenants in common in equal shares. (*Hardenbergh* v. *Bacon,* 35 Cal. 378.)

Garoutte, J. — This is an appeal from a judgment in favor of plaintiff in an action to recover a deposit made

on a sale of real estate situate in the city and county of San Francisco, the plaintiff claiming the title to be defective. The condition of defendants' title to the tract of land is the only question involved.

In the case of *Turner* v. *McDonald*, 76 Cal. 177, this court said: "A perfect title must be one that is good and valid beyond all reasonable doubt"; and in that case it was conceded by counsel upon both sides that a title, to be good, "should be free from litigation, palpable defects, and grave doubts, should consist of both legal and equitable titles, and should be fairly deducible of record." It would seem, in fairness to the vendee, that the foregoing requirements should be held absolutely necessary, in order to fully satisfy the covenant of perfect title. Certainly such a condition of title must exist before it can be said to be good and valid beyond reasonable doubt. (See *Reynolds* v. *Borel*, 86 Cal. 538; *Richmond* v. *Gray*, 3 Allen, 27; *Sturtevant* v. *Jaques*, 14 Allen, 526.)

While the record here is silent as to the fact, we will assume that upon the fifteenth day of December, 1874, the legal and record title to this tract of land was vested in George Styles. Upon that day he filed a homestead upon the property in all respects in conformity with law, setting forth, among other things, that he resided upon the property with his family, consisting of Jane Styles, his wife, and three children, and that said property was community property. Upon March 28, 1879, he died. Upon November 4, 1880, the widow petitioned to have the property set apart as a homestead for the use of the family. The court set it apart as a homestead for the use of the family, consisting of Jane Styles, widow, and George, Robert, and William Styles, minor children. One Samson was appointed guardian of the estates of the said minors, and returned, in an inventory and appraisement, an undivided one half of said property as the estate of said minors, and upon proceedings in the probate court said property of the minors was sold to defendant Kate Miles, who at the same time received a

deed of bargain and sale to all of said property from said Jane Styles. It is insisted by respondent, and was so found by the court, that by reason of the order setting aside the property as a homestead for the use of the family, the widow and children took thereof in equal shares, and that consequently the title to an undivided one-fourth interest in said property still remains in said minors, the guardian's deed to defendant Kate Miles only purporting to convey an undivided one-half interest thereof. In 1880, at the time the order of the probate court was made setting aside this property for the use of the family, section 1468 of the Code of Civil Procedure read as follows: " When property is set apart for the use of the family, such property shall be for the benefit of the several parties, as provided in section 1465 of this code." Prior to April, 1880, this section provided that the widow should take one half of the property set apart, and the minor children one half. At the session of the legislature of 1881 the section was again changed, so as to read practically as it did prior to the provision of 1880. We must assume that the legislature meant something by the varied and repeated legislation with reference to this section of the code. If the *quantum* of this homestead property which was to pass respectively to the widow and minor children under the law as it stood in 1879 was not changed by the amendment of 1880, why the change in the law? Why idle and useless legislation? And again, why did the legislature in 1881 return to the old law? This question as to the vesting of the title to the homestead was the only subject of legislation involved in the section during all these changes, and the amendments at these various times were so substantial as to amount to repeals of the section as it previously stood. It would seem that, under the section as quoted, the widow and minor children took equal shares in this property as tenants in common. This is its intent, or it has no meaning whatever. " When parties take title and hold as tenants in common, each will be deemed to hold an equal share, there

being nothing to indicate to the contrary." (*Harden-bergh* v. *Bacon*, 33 Cal. 378.)

In this decree there is nothing to indicate to the contrary. The section of the code is absolutely silent upon the question, and we conclude the legislative intent must be held to have been that the minor children should share equally with the widow. Consequently, if these probate proceedings were valid, and any title whatever to this property vested in these minors by reason thereof, then an undivided three fourths vested, and they still remain possessed of the title to an undivided one fourth thereof.

Appellants insist that as Styles died in 1879, the property being community, one half vested immediately in the widow, and one half in the children, subject to be set apart as a homestead under the law as it stood at the time of his death, and that section 1468 as amended in 1880, if applicable to this case, would deprive the widow of vested rights. As the homestead law in existence at the time of Styles's death was repealed by the law of 1880, this reasoning would force us to the conclusion that no homestead whatever could be set apart out of this property. In *Estate of Boland*, 43 Cal. 642, the court said: "The right of Margaret Lane to have a homestead set apart to her from the estate of her former husband, John Boland, must therefore be determined from the facts as they existed on the 3d of January, 1870, when the order of the probate court was made." And in *Sulzberger* v. *Sulzberger*, 50 Cal. 388, the court said: "The homestead is to be set apart in pursuance of the statute in force at the time when the order is made, and the interest therein which the widow and the surviving child will take is to be determined by the same statute." In this case it was also decided that the right to have a homestead set apart out of the testator's separate property was paramount to his right to devise the property. We conclude, therefore, that the order of the probate court setting aside this property as a homestead, under section 1468 of the Code of Civil Procedure as it existed

at the date of the order, did not give that provision a retroactive effect, and interfered with no vested rights of the widow. It follows, that unless Jane Styles, the widow, by right of survivorship, under her recorded homestead, became the owner in fee of this entire property, that title to a one-fourth interest thereof is still outstanding in the minor children.

It is settled law in this state that on the death of the husband, the community property upon which a homestead exists vests absolutely in the widow; and in the case of *Watson* v. *His Creditors*, 58 Cal. 556, it was held that the court had no power to make a decree setting the property apart for the use of the family when such a homestead existed, and that the effect of such a decree, no matter how broad its language, is simply to take the property out of administration. This principle is supported by many authorities, and is undoubtedly the true rule; but these decisions are founded upon the previous determination of the court, that a valid recorded homestead upon community property is in full life at the date of such decree; and in this case there was no record, official or otherwise, to bring home to the vendee knowledge of any such state of facts. To be sure, the trial court found that this property was community property, and that Styles and his wife resided upon it at the date of the homestead, and that the homestead had not been abandoned, and that Styles died in 1879; but we cannot see how these findings of the court, tending to show that this homestead was a valid homestead such as would vest the title in fee in the widow upon the death of said Styles, would indicate a good and perfect title to Sheehy, the plaintiff in this action, at a period months previous to the time when these findings were made. All the plaintiff knew about the *status* of the title to this property was from the recorded homestead; the recitals therein filled the full measure required by the statute, but they were not binding on third parties, for their truth could be assailed by any person having an interest in setting aside the homestead. The vendee is

not required to rely upon the word of mouth of the ven-
dor that he has good title; the title must be produced
before him in some tangible form, in order that it may
be measured and weighed.

In this case the recitals in the homestead were not
evidence to the vendee that the title was good, neither
was he compelled to go out into the world upon an ex-
ploring expedition, and by an examination of witnesses
determine, and perchance determine wrongly, the ex-
istence of those facts that were necessary to exist in
order that Jane Styles, the widow, may have acquired
this property by right of survivorship, to wit, that it was
community property; that Styles and his wife resided
upon the property with their children at the time the
homestead was declared and recorded; that it had not
been abandoned; that it was not void by reason of a
previous homestead having been declared; that Styles
was dead, etc.   Under this agreement, which contains a
covenant of perfect title, when considered in connection
with the condition and appearance of this title as it is
presented to us, if this were an action for specific per-
formance, it would seem no court of equity would com-
pel the vendee to pay ten thousand dollars for this tract
of land.   In addition to these matters, which are pre-
sented from a consideration of the record homestead, the
vendee was confronted with this probate homestead, and
the proceedings pertaining to the sale of the various
interests derived therefrom.   As we have seen, those
authorities holding that decrees of the court setting
aside probate homesteads from property upon which
recorded homesteads rested were void and of no effect
gave the vendee in this case no light as to the condition
of this title; for he possessed no knowledge, and was not
required to go forth seeking knowledge as to whether
or not this recorded homestead was such as to vest title
in the widow upon the death of Styles.   The inference
more properly to be drawn from this action of the court
in setting aside the probate homestead would be that the
court would not do an idle thing by making a useless

decree, and that from some cause shown at that time the recorded homestead was adjudged void, and that this decree was a valid decree made by the court to preserve the property to the use and benefit of the family as best it could. For the foregoing reasons, we conclude that appellants' title to this realty was not free from palpable defects and grave doubts, was not fairly deducible of record, and was not a good and valid title beyond reasonable doubt.

Let the judgment be affirmed.

PATERSON, J., concurred.

HARRISON, J., concurring. — 1. Upon the facts found by the trial court, the declaration of homestead filed for record in the county recorder's office by George Styles had the effect, upon his death, to vest in his surviving widow all the estate in the land therein described that was held by him in his lifetime; and her deed to the appellant Kate Miles transferred to her the same estate. The order of the probate court setting this land apart as a homestead for the benefit of the widow and minor children, although made upon the application of the widow, did not divest her of the title that had already vested in her by virtue of her survivorship. That court had no jurisdiction of the subject-matter with which it purported to deal, and its order thereon was without any effect upon the title thus held by the surviving widow. The jurisdiction which is conferred upon the superior court " in all matters of probate " is separate and distinct from the ordinary jurisdiction which it exercises in civil matters, and is limited in its exercise to property of the estate of a decedent which is under its control in course of administration; and as at the instant of the husband's death his widow became vested with the entire estate in the land, the court had no more jurisdiction over it than it had over any other land in which the decedent may have held a life estate, and could make no order affecting its title or the right to its pos-

session. The order setting it apart as a homestead for the use of the widow and minor children had only the negative effect of declaring that it was not subject to administration, except that if the estate of the decedent had any interest in the land subject to such administration such interest would by virtue of the order pass to the widow and minor children.

Whether or not the extrinsic facts were such as to cause the filing of the declaration to impress upon the land the character and incidents of a homestead weie matters *in pais*, and beyond the jurisdiction of the court sitting in probate to determine. Any issue involving that question, as well as the widow's right of survivorship, must be determined in a different forum, and could not be determined upon an application to the court in probate to set the property aside as a homestead. If the court, upon the contention of any party interested that the property was a part of the estate, notwithstanding the declaration of homestead that had been filed in the lifetime of the decedent, should, upon an application therefor, set it apart as a homestead, it would still follow that only such interest as belonged to the estate could be affected by such order, and any controversy between the widow claiming as survivor and the children claiming under this order could not be determined by the probate court.

2. Assuming, however, that the filing of the declaration was insufficient to impress the land with the homestead claim, and that the land was a part of the estate of the decedent subject to administration, the effect of the order setting it apart was to vest the interest of the decedent's estate in the land so set apart in the " several parties " constituting the family, as is clearly shown in the opinion of Mr. Justice Garoutte, the widow and minor children each taking an undivided fourth. As the sale by the guardian did not purport to be more than of an undivided half of the property, it is evident that one fourth of whatever interest passed under the order set-

ting it aside as a homestead is still outstanding in the minor children.

3. It is a settled rule of this court, that, under a contract for the sale of land which provides for a perfect title, the title must be free from reasonable doubt and fairly deducible of record. The vendee is not required to accept a title depending upon adverse possession, or upon matters which rest purely in parol. Under this rule, the respondent was not required to accept the title tendered him by the appellant. If the homestead created in the lifetime of Styles was for any reason ineffective, it is conceded that an undivided one fourth of the land was not embraced in that deed. The respondent was not compelled to accept the statement of the appellant, or of any one under whom she claimed, that at the time of filing the declaration the facts existed from which the homestead claim was thereby impressed upon the land, so that upon the death of Styles the title vested in his widow, nor was he under any obligation to institute such examination, and determine at his own risk whether they did exist.

4. The petition for the guardian's sale of the interest of the minors in the land was, in my opinion, sufficient in form to give to the court jurisdiction to make the order of sale.

For these reasons the judgment should be affirmed.

Hearing in Bank denied.