97   147
144   313

[No. 14291.   Department Two. — January 10, 1893.]

## GEORGE W. PECKHAM ET AL., RESPONDENTS, *v.* M. M. STEWART, APPELLANT.

VENDOR AND PURCHASER — CONTRACT OF SALE — DEPENDENT COVENANTS — FAILURE TO EXECUTE DEED — ACTION BY PURCHASER — PLEADING — WRITTEN OFFER TO PERFORM — TENDER. — Where, by the terms of a contract for the sale of real estate, the vendor agreed to execute a conveyance of the property on or before a specified date, provided the purchasers should, on or before that date, pay the balance of the purchase price, the covenants are mutual and dependent, and the purchasers cannot sue for damages for failure of the vendor to make the conveyance, unless the complaint alleges a full performance, or offer to perform, on their part; but it is sufficient to aver an offer in writing by the purchasers to pay the residue of the purchase-money, accompanied by a demand for a deed; and it is not incumbent upon the purchasers to allege or prove an actual production or tender of the money to the vendor, in order to enable them to maintain the action, if the vendor did not signify his acceptance of the offer.

ID. — CONTRACT FOR "GOOD AND PERFECT TITLE." — To satisfy a contract for the conveyance of a "good and perfect title," the title must not only be good in point of fact, but it must also be apparently perfect when exhibited, — that is, free from any reasonable objection. It is not sufficient that it can be shown to be good as the result of an action instituted for the purpose of reforming defects existing in any deed which is necessary to make the chain of title complete.

ID. — APPARENT DEFECT IN TITLE — MISNOMER OF GRANTEE. — Where the legal title to land is in a person bearing the name of K. F. Redmond, the execution of a deed of the land by one K. F. Redman does not transfer such a title to the vendee named therein as an intending purchaser from such vendee is bound to accept; and a subsequent execution by the said Redman of another deed to the same land to the same vendee, in which he recites that he derived title thereto under the name of K. F. Redmond, that his name was erroneously written Redmond in the conveyances to himself, and that he is the identical person to whom such conveyances were in fact made under the name of K. F. Redmond, does not, of itself, cure the apparent defect in the vendee's title.

ID. — NAMES NOT IDEM SONANS — PRESUMPTION AGAINST IDENTITY. — The
names "K. F. Redmond" and "K. F. Redman" are not *idem sonans;*
but the presumption is, that they refer to different persons.
ID. — CHANGE OF NAME — CONSTRUCTION OF STATUTE — MISNOMER. — The
statute of 1873–74, p. 345, which provides that "any person in whom
the title to real estate is vested, who shall afterwards, from any cause,
have his or her name changed, shall, in any conveyances of real estate so
held, set forth the name in·which he or she derives title to said real
estate," was only intended for such cases as that of a married woman
conveying land to which she acquired title before her marriage, or where
a man whose name has been changed by law conveys property, the title
to which was vested in him prior to such change of name; and it cannot
be construed as authorizing one who has in fact received a conveyance
in which his name has been erroneously stated to correct such mistake
by reciting the fact in a subsequent deed.

APPEAL from a judgment of the Superior Court of
Santa Cruz County, and from an order denying a new
trial.

The facts are stated in the opinion of the court.

*Julius Lee,* and *L. D. Holbrook,* for Appellant.

The demurrer should have been sustained, as the com-
plaint fails to allege an actual tender of the money due
under the contract. (*Englander* v. *Rogers,* 41 Cal. 420;
*Hill* v. *Grigsby,* 35 Cal. 656; *Bohall* v. *Diller,* 41 Cal. 532;
*Kelly* v. *Mack,* 45 Cal. 303. See also *Nelson* v. *Plimton
Fire-proof E. Co.,* 55 N. Y. 484; *Fuller* v. *Hubbard,* 6
Cow. 13; 16 Am. Dec. 423; *Strong* v. *Blake,* 46 Barb.
227; *Bakeman* v. *Poole,* 15 Wend. 637; Dart on Vendors,
449, 450; Chitty on Contracts, 638.)

*James A. Hall,* and *Cross & Hall,* for Respondents.

A tender of the balance due was not necessary. The
title being defective, and not such as the plaintiffs could,
in justice to themselves, accept, no tender could have
been made by them, because defendant would, of course,
have accepted the tender. (Pomeroy on Specific Per-
formance, sec. 361; *Karker* v. *Haverly,* 50 Barb. 79;
*Delavan* v. *Duncan,* 49 N. Y. 485; *Hall* v. *Whittier,* 10
R. I. 530.) The title was defective, as there was no
record of any conveyance by K. F. Redmond to any

one. The conveyance by K. F. Redman passed no title. Difference of name *prima facie* imports difference of person. (*McNally* v. *Mott*, 3 Cal. 235; *Sutter* v. *Cox*, 6 Cal. 415; *Hall* v. *Yoell*, 45 Cal. 587.) The names "Redmond" and "Redman" are not *idem sonans*. (See *Amann* v. *People*, 76 Ill. 188; *Entrekin* v. *Chambers*, 11 Kan. 377; *Queen* v. *Carter*, 6 Mod. 168; *Commonwealth* v. *Gillespie*, 7 Serg. & R. 469; 10 Am. Dec. 475; *Shumaker* v. *Schoen*, 19 Pittsb. L. J. 69; *Cruikshanks* v. *Comyns*, 24 Ill. 692; *Ex parte Cheatham*, 6 Ark. 531; 44 Am. Dec. 525; *Purchman* v. *State*, 2 Tex. App. 228; 27 Am. Rep. 435; *Moynahan* v. *People*, 3 Col. 367; *Henderson* v. *Cargill*, 31 Miss. 367; *Commonwealth* v. *Mehan*, 11 Gray, 321; *Humphrey* v. *Whitten*, 17 Ala. 30; *Marshall* v. *Jeffries*, 1 Hemp. 299; *Selman* v. *Orr*, 75 Tex. 528; *Black* v. *State*, 57 Ind. 109; *Tannett's Case*, Russ & R. C. C. 351; *Chamberlin* v. *Blodgett*, 96 Mo. 482; *Adams* v. *State*, 67 Ala. 89; *Brown* v. *People*, 66 Ill. 344; *Jeune* v. *Jeune*, 7 Mass. 94; *Feller* v. *State*, 7 Ind. 659; *Schoonhoven* v. *Gott*, 20 Ill. 46; 71 Am. Dec. 247; *Gordon* v. *Austin*, 4 Term Rep. 611; *Shakespeare's Case*, 10 East, 83; *Jones* v. *Stenor*, 3 Bulst. 121; *Morgan* v. *State*, 61 Ind. 447; *Porter* v. *State*, 17 Ind. 415; *Bingham* v. *Dickie*, 5 Taunt. 814; *Tarpley* v. *State*, 79 Ala. 271; *Neiderluck* v. *State*, 21 Tex. App. 320; *La Fayette* v. *Workman*, 107 Ind. 404; *Wheelen* v. *Weaver*, 93 Mo. 430; *Brown* v. *State*, 11 S. W. Rep. 1022; *Bull* v. *Franklin*, 2 Speers, 46.)

De Haven, J. — The defendant entered into a written agreement with plaintiffs, by which he agreed to execute to them on or before December 1, 1888, a conveyance of certain described lots which would vest in plaintiffs " a good and perfect title " thereto, provided that plaintiffs should, on or before that date, pay the sum of $8,675, the balance of the purchase price agreed to be paid for such lots. The plaintiffs paid one thousand dollars on account of the purchase price at the date of the agreement. This action is to recover damages from defendant for an

alleged failure on his part to make to plaintiffs a deed in accordance with the agreement.

The plaintiffs recovered judgment for the sum of one thousand dollars, and the defendant appeals. The grounds upon which the defendant relies for a reversal of the judgment are: 1. That the complaint does not state a cause of action; and 2. That the evidence shows that he did tender to plaintiffs a deed conveying a perfect title to the lots sold.

1. The plaintiffs were not, under the contract set out in the complaint, entitled to a conveyance of the lots described in the agreement until they first paid, or offered to pay, defendant the balance of the purchase price agreed upon, and unless the complaint alleges a full performance or offer to perform their part of the contract in this respect, they are not entitled to maintain this action. (*Englander* v. *Rogers*, 41 Cal. 421; *Easton* v. *Montgomery*, 90 Cal. 307; *Dennis* v. *Strassburger*, 89 Cal. 583; *Hill* v. *Grigsby*, 35 Cal. 656.) The law applicable to this branch of the case is stated by Mr. Justice Rhodes with his usual clearness and accuracy in delivering the opinion of the court in *Hill* v. *Grigsby*, 35 Cal. 656, in this language: " In a contract for the sale of real estate, where the purchaser covenants to pay the purchase-money, and the vendor covenants to convey the premises at the time of payment, or upon the time of payment of the money, or as soon as it is paid, — and they all mean the same thing, — the covenants are mutual and dependent, and neither can sue without showing a performance, or an offer to perform, on his part; and performance, or the offer to perform, on the one part is a condition precedent to the right to insist upon a performance on the other part."

The allegation of the complaint upon this point is, that plaintiffs did, on August 31, 1888, offer in writing to pay the defendant the full purchase price of the lots mentioned in the agreement. The offer is addressed to the defendant, and signed by plaintiffs, and, so far as necessary to be here stated, is as follows:-

, "Please take notice that we, . . . . the obligees in a certain bond for a deed . . . . made to you by us on the first day of June, 1888, . . . . do hereby, in writing, offer to pay to you, the said obligor therein, the sum of $8,675.

"And we do hereby demand of you that you do forthwith make . . . . to us a good and sufficient conveyance of the property mentioned and described in said bond, with the usual covenants, and that you shall give to us a perfect title to said lands, all in accordance with said bond."

It is urged by defendant that this offer was not sufficient to impose upon him the obligation to tender the conveyance, and that it was incumbent upon plaintiffs to actually produce and tender to him the balance of the purchase-money, as a condition precedent to their right to maintain this action, and that the complaint is defective because it fails to allege an actual tender of the money to be paid under the contract. In support of this position, the case of *Englander* v. *Rogers*, 41 Cal. 421, is cited. It was held in that case that a simple offer to pay, without an actual tender of the money, was insufficient to put the vendee in a contract of sale in default. The court there said: "To constitute a valid tender in such a case, the party must have the money at hand, immediately under his control, and must then and there not only be ready and willing but produce and offer to pay it to the other party, on the performance by him of the requisite condition."

This was the rule of the common law as to what was required in order to make an effectual tender of money, when its production was not dispensed with by some act or declaration of the party entitled to receive it (2 Greenl. Ev., 15th ed., sec. 602; *Bakeman* v. *Pooler*, 15 Wend. 637); and as there was no statute of this state relating to the subject of tender when *Englander* v. *Rogers*, 41 Cal. 421, was decided, the common law furnished the rule of law for the decision of that case (1 Hittell's Gen. Laws, par. 599); but section 1496 of the Civil Code,

since enacted, has changed the common-law rule, which required its actual production in making a tender of money. That section declares: "The thing to be delivered, if any, need not in any case be actually produced upon an offer of performance, unless the offer is accepted." The written offer of plaintiffs in this case complied with the requirements of this section. They had a right, at the time of making the offer, to demand that defendant perform his part of the contract by delivering the conveyance required by the contract, and until defendant signified his acceptance of their offer to pay by a tender of such conveyance, plaintiffs were under no obligation to actually produce before him the money mentioned in their written offer. It follows from these views that the demurrer to the complaint was properly overruled.

2. The court found that the defendant's title to the land which he agreed to convey was defective, and that he did not, at the date when he tendered a conveyance thereof to plaintiffs, "or at any time thereafter, or at the time of the trial of this case," have a perfect title thereto. It is claimed that this finding is against the evidence. It is shown by the statement on motion for a new trial that on October 20, 1876, one Jane Coolidge held the legal title to about two thirds of said land, and that on that day she conveyed the portion thereof owned by her, the name of the grantee in the deed then made by her being given as K. F. Redmond. On November 17, 1876, one Callahan, who was the owner of the remainder of the land, conveyed the portion owned by him, the name of the grantee in his deed being also given as K. F. Redmond; so it would seem that on this last-named day the apparent legal title to all the land was in a person bearing the name of K. F. Redmond. Thereafter, one K. F. Redman executed a deed of all the land to defendant, and after this, and before defendant tendered a deed thereof to plaintiffs, said Redman executed another deed of the same land to defendant, in which he recited that he derived title thereto under the

name of "K. F. Redmond"; that his name was erroneously written "Redmond" in the conveyances which he received from Callahan and Jane Coolidge, and that he is the identical person to whom such conveyances were in fact made under the name of "K. F. Redmond."

This is all the evidence on the point, and upon these facts we are of opinion that defendant did not show such a title to the land in question as plaintiffs were bound to accept under their agreement. The apparent legal title was in K. F. Redmond, and a deed executed by K. F. Redman was not apparently sufficient to transfer such title. The names were not *idem sonans;* and as the purpose of a name is to identify the person to whom it is given, the presumption would be, that the name of Redmond and Redman refer to different persons. (*McNally* v. *Mott*, 3 Cal. 235.) The second deed from Redman, in which he recites that he is the identical person named as Redmond in the prior conveyances, does not help the matter. These recitals may be true in point of fact, and upon being established by proof in a proper action the defendant could doubtless be able to obtain a judgment reforming the deeds under which his grantor, Redman, claimed, and which judgment would, in effect, give him a "good and perfect title" to the land, within the meaning of the law and the agreement which he made with plaintiffs. But a good and perfect title is one which is not only good in point of fact, but it must also be apparently perfect when exhibited, — that is, free from any reasonable objection. It is not sufficient that it can be shown to be good as the result of an action instituted for the purpose of reforming defects existing in any deed, which is necessary to make the chain of title complete. This was so substantially held by this court in the late cases of *Turner* v. *McDonald*, 76 Cal. 177, 9 Am. St. Rep. 189, and *Sheehy* v. *Miles*, 93 Cal. 292, and the same rule is declared also in *Richmond* v. *Allen*, 3 Allen, 23, and *Tillotson* v. *Gesner*, 33 N. J. Eq. 327.

In holding that the last deed executed to defendant

by Redman did not, of itself, cure the apparent defect in defendant's title growing out of the fact that the land was formerly conveyed to Redmond, and not Redman, we have not overlooked the act concerning conveyances, cited by appellant (Stats. 1873–74, p. 345), the first section of which is as follows: —

"Sec. 1.    Any person in whom the title of real estate is vested, who shall afterwards, from any cause, have his or her name changed, shall, in any conveyances of real estate so held, set forth the name in which he or she derives title to said real estate."

This statute evidently was intended for such cases as that of a married woman conveying land to which she acquired title before her marriage; or where a man whose name has been changed by law conveys property, the title to which was vested in him prior to such change of name, but it has no application to a case like this, and cannot, without a very wide departure from its language, be construed as authorizing one who has in fact received a conveyance, but in which his name has been erroneously stated, to correct such mistake by reciting the fact in a subsequent deed.    The statute applies only to the cases expressly named in it, and provides for them the same rule for conveyancing always followed before its enactment by those who understood the proper method of transacting such business.

Judgment and order affirmed.

McFarland, J., and Harrison, J., concurred.