## BARTLETT v. McGEE.

### S. F. No. 97; August 20, 1896.

#### 45 Pac. 1029.

**Vendor and Vendee—Insufficient Title—Recovery of Money Paid.**—Where a purchase contract gives the vendee thirty days for examination of title, provides for a deposit, and its return if title proves invalid, without specifying the time within which the conveyance is to be made, an unrecorded contract for sale of lands, of which the vendee has no notice, between the vendor and a third person, existing when the contract was made, and which, by mistake, included the same land, is a defect which will render the title invalid, and entitle the vendee to recover the deposit if the vendor fails within a reasonable time to remove the defect.

APPEAL from Superior Court, Alameda County; W. E. Greene, Judge.

Action by Samuel Bartlett against James McGee to recover a deposit on a contract for the purchase of land on defendant's failure to furnish a good title. From a judgment for plaintiff and an order denying a new trial defendant appeals. Affirmed.

A. A. Moore for appellant; Whitmore & Schutleff for respondent.

VANCLIEF, C.—On August 26, 1887, the defendant agreed to sell to A. Bartlett (brother of plaintiff) a certain lot of land situate in Berkeley, Alameda county. At the date of the agreement, A. Bartlett deposited with defendant $950 as a partial payment of the purchase money, on the express condition that it should be returned to him in case defendant's title should prove invalid. The agreement and deposit were evidenced by the following written memorandum, signed by the defendant:

"$350.                              Berkeley, August 26, 1887.

"Received of A. Bartlett the sum of three hundred and fifty ($350) dollars, being partial payment on a deposit of eleven hundred dollars in the sale of a certain block in the McGee tract, in Berkeley, bounded by Catherine street, Mc-

Gee avenue, Bancroft Way, and Allston Way, containing twenty-four lots, 50x130, the purchase price being eleven thousand dollars, and the terms as follows: Deposit, ten per cent.; one-third cash on perfection of title and surrender of deed, and the balance at seven per cent. interest, payable in one and two years; thirty days allowed to search title. If the title proves invalid, the deposit will be returned. The sale is subject to the approval of the owner, James McGee.

                "C. H. McLENATHEN & CO.

"This sale is approved.

                                his
                        "JAMES  X  McGEE.
                                mark

                                "August 26th.
"Received $600 additional on above deposit.
                        "C. H. McLENATHEN & CO."

On April 3, 1888, A. Bartlett assigned the agreement, with all his rights thereunder, to plaintiff, who, on April 23, 1888, commenced this action to recover the deposit of $950, on the alleged ground that defendant had failed and refused to make or tender conveyance of a valid title. The judgment was in favor of the plaintiff for the sum demanded; and defendant has appealed from the judgment, and also from an order denying his motion for a new trial.

It is alleged in the complaint that the defects in defendant's title were (1) that the land described in the agreement was subject to a recorded mortgage; and (2) that it was subject to an agreement in writing by and between defendant and one George Bates, executed August 25, 1887 (one day prior to that between defendant and Bartlett), whereby defendant agreed to sell said lot of land to Bates, and to give Bates until October 1, 1887, to examine the title. Upon the expiration of the thirty days allowed plaintiff in which to examine the title, to wit, on September 26, 1887, A. Bartlett met defendant and his counsel, at the request of the latter, for the purpose of paying the first installment of purchase money, receiving deed from defendant, and executing mortgage to defendant to secure deferred payments, as per agreement. Bartlett then produced and tendered to defendant a sufficient sum of money to make the first payment, but on the express condition that defendant should first show satisfaction of the mortgage, but said nothing on that oc-

casion about the contract of sale to Bates. Defendant then admitted the existence of the unsatisfied mortgage of record, but said he could not satisfy it so late in the day (it then being about 5 o'clock P. M.), but that he would satisfy it the next day, and would allow Bartlett to retain sufficient of the money tendered to satisfy the mortgage until defendant should satisfy it. Bartlett declined to accept this proposal, and refused to pay any part of the purchase money, except on the condition upon which he made the tender. On the next day (September 27th) defendant satisfied the mortgage, and tendered to Bartlett a deed of the land, with proper certificate of satisfaction of the mortgage, and demanded of Bartlett payment of the first installment, and that he perform his part of the agreement. Bartlett refused to take the papers thus tendered, or even to hear them read, though he was informed of their general purport. A few days thereafter, about October 3d, Mr. Bates notified Bartlett that he (Bates) held a contract with defendant, dated August 25, 1887, for the purchase of the same lot described in defendant's contract with Bartlett, and that he was about to commence an action against defendant to enforce specific performance thereof. Thereafter, on October 25, 1887, Bartlett demanded of defendant a return of said deposit of $950, and then, for the first time, objected to defendant's title, on the ground of defendant's agreement to sell the land to Bates. Defendant then (as in his answer) denied the existence of the alleged contract with Bates, and refused to return the deposit. Thereafter, on November 11, 1887, Bates commenced an action for the specific performance of his said contract, of which the following is a copy:

"For and in consideration of the sum of one thousand dollars to me in hand paid, and the receipt of which I hereby acknowledge, I covenant and agree to sell to George Bates, of the town of Berkeley, a certain block of land situated in the town of Berkeley, county of Alameda, state of California, and bounded as follows: On the south side by Bancroft Way, on the east by Grant street, on the north by Allston Way, and on the west by McGee avenue, otherwise called 'Hamilton Street,' on the following terms: George Bates shall be allowed till October 1, 1887, to examine title; and, if the title is not perfect, then the deposit shall be immediately returned. If the title be good and valid, George

Bates shall pay on or before said first day of October the sum of two thousand six hundred and sixty-six dollars and sixty-six cents ($2,666.66), and on the first of October, 1888, a further sum of three thousand six hundred and sixty-six dollars and sixty-seven cents ($3,666.67), and on the first day of October, 1889, a further sum of three thousand six hundred and sixty-six dollars and sixty-seven cents ($3,666.-67); making in the aggregate the sum of ten thousand dollars in addition to the thousand dollars already paid. Deferred payments shall bear interest at the rate of seven per cent. per annum from October the first, 1887, and shall be secured by a mortgage on the property sold. On the completion of the payment to be made on October the 1st, 1887, the two thousand six hundred and sixty-six 66/100 dollars, I agree to give to said George Bates a grant, bargain, and sale deed to the whole of the block hereinbefore described, free of all liens and incumbrances, except the mortgage to be given by him to me for the balance of the purchase money. And whereas said George Bates intends to subdivide said block, and sell the subdivisions, I hereby agree to release from the effect of the mortgage any portion of the block in behalf of the purchaser of such subdivision, on the following terms: Whenever I shall receive a sum of three hundred and thirty-three dollars, I will release a lot not greater than fifty feet broad by a hundred and thirty feet long, and in the same proportion for larger or smaller lots. I also agree to open the street past the block, called 'Allston Way,' whenever said George Bates shall wish it.

his<br>
"JAMES  X  McGEE.<br>
mark

"Witness: R. A. MORSE."

Though this contract bears no date, it is admitted that it was executed on August 25, 1887; and there is no question that the description therein plainly embraces the whole lot described in defendant's agreement with Bartlett of August 26, 1887. But it is claimed, and for all purposes of this action may be assumed, that the lot which defendant afterward agreed to sell to Bartlett was included in the description by mistake. It is further claimed by appellant that the mistake was corrected on August 26, 1887, by canceling the contract of August 25th, and executing another, which

excluded the Bartlett lot; but, on sufficient evidence, the court found that the contract of August 25th never was canceled nor reformed, and that no substitute therefor was ever executed. About five months after the commencement of Bates' action, and while it was pending, to wit, on April 23, 1888, the plaintiff commenced this action; and the pendency of Bates' action continued about seventeen months after the commencement of this action, to wit, until September 27, 1889, when it was dismissed; but on what terms or for what reason it was dismissed does not appear.

It is admitted, and I think properly, by counsel on both sides, that time of performance by either party was not of the essence of the contract, and that each party was entitled to a reasonable time within which to perform his part, provided he did not absolutely refuse to perform it before the expiration of such reasonable time; and, accordingly, I think defendant satisfied the mortgage, and removed all objection to his title on that ground, within a reasonable time; but, assuming that the Bates contract was a valid objection to his title, he was bound to cure that defect also before he would have been entitled to performance on the part of Bartlett, unless Bartlett had waived that objection by failing to urge it on September 26, 1887, when the only ground of objection urged by him was the encumbrance by mortgage. As to such waiver, it is sufficient to say that the court properly found that Bartlett did not know of the existence of the Bates contract until after the twenty-sixth day of September, 1887, nor until about the first day of October, 1887, when he was notified thereof by Bates as aforesaid. On this point the evidence was conflicting, but the preponderance thereof seems to be clearly in favor of the plaintiff. Surely, Bartlett could not have waived a defect in the title before he had notice thereof, actual or constructive. The Bates contract was not recorded.

The court found, under the heading of "Facts," that the defendant did not exercise due or reasonable diligence in clearing his title from the contract of August 25, 1887, or from the effects thereof, nor within a reasonable time make said title good or valid, as provided in his agreement with Bartlett; and in this connection it should be observed that the defendant never offered to clear his title of the cloud cast upon it by the Bates contract. In his answer, he simply

denied the existence of the Bates contract, although Bates' suit on that contract had been pending five months before he answered. The court found, as a conclusion of law, "that the making and existence of the contract of August 25, 1887, between defendant and said George Bates, rendered the title to the said land and premises invalid and imperfect, and subjected the same to reasonable doubt and litigation, . . . . and not good or valid as contemplated by said agreement." I think this conclusion is fairly deducible from the facts found, and is correct: Turner v. McDonald, 76 Cal. 177, 9 Am. St. Rep. 189, 18 Pac. 262; Sheehy v. Miles, 93 Cal. 288, 28 Pac. 1046; Peckham v. Stewart, 97 Cal. 147, 31 Pac. 928; Reynolds v. Borel, 86 Cal. 538, 25 Pac. 67. To satisfy defendant's contract, the title must not only have been good in point of fact, but it must also have been free from any reasonable objection. It is not sufficient that it may be shown to be good as the result of an action instituted for the purpose of reforming defects in any deed or contract by which it appears to be defective.

In his brief, counsel for appellant contends that several of the findings are "contrary" to the evidence, but there is no specification in his statement on motion for new trial of any particular in which he claims that the findings are not justified by the evidence. The findings of fact cover twelve pages of the transcript, and are numbered from 1 to 16, some of which contain several distinct propositions. The nearest approach to a specification of any particular in which it is claimed the evidence does not justify the findings is the following: "The findings of fact numbered from 1 to 16, inclusive, are contrary to the evidence, and each and every one thereof are contrary to the evidence, in finding precisely to the contrary of the facts proven; and, for like reason, the said decision and the whole thereof is against law." Nevertheless, I have carefully examined the evidence, with the result that, in my opinion, it is sufficient to justify all the findings. The objections to the findings are based upon the assumption that the evidence showed that the cloud upon defendant's title might have been removed by correcting a mistake in the Bates contract; but conceding the mistake, and that the evidence in this case was prima facie sufficient to warrant a decree correcting it, at suit of defendant against Bates, yet, so far as plaintiff was concerned, the cloud re-

mained, and so obscured the title that he was not bound by his contract to accept it, and risk the result of a lawsuit with Bates. That Bates denied the mistake, and insisted upon the validity of his contract, was sufficiently evinced by the pendency of his action against defendant to enforce that contract, which action had been pending five months before this action was commenced. The only answer offered by appellant to this view of the case is a charge of collusion between plaintiff and Bates, of which there is no evidence, and which was positively denied by plaintiff and Bates.

Certain errors in law are specified by appellant in the statement on motion for new trial, and some of them are relied upon here, but none of them are sufficiently plausible to merit special consideration. They, too, are principally founded on the mistaken view of the law that it would be a sufficient defense to prove that the land for which plaintiff contracted was included in the Bates contract by mistake, and that the Bates contract ought to be reformed so as to exclude it. Unfortunately for this theory, the Bates contract could not have been reformed in this action, nor in any action to which Bates was not a party, and possibly not in any action. I think the order and judgment should be affirmed.

We concur: Belcher, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order and judgment are affirmed.