[Civ. No. 22911.   Second Dist., Div. Two.   Apr. 3, 1958.]

LOUIS GROOBMAN, Appellant, v. JAMES W. KIRK et al.,
as Coadministrators, etc., Respondents.

Bewley, Knoop & Lassleben and Burnett Kee Maxwell, Jr., for Appellant.

Shafer & Seymour and Samuel V. Cornell for Respondents.

HERNDON, J.—Plaintiff and appellant, hereafter referred to as "buyer," appeals from an adverse judgment in an action for specific performance of a contract of sale of real property. The defendants and respondents are the administrators of the estate of Nellie L. Kirk who died after the case was submitted, but before judgment. Mrs. Kirk was the seller of the property and will hereafter be referred to as the "seller."

In the court below the cause was submitted for decision at the conclusion of plaintiff's case, defendant seller offering no evidence. Hence there is no dispute as to the essential facts. The parties seem to agree that the determinative question of law is substantially as follows: whether buyer's obligation to pay into escrow the agreed balance of the purchase price within the specified 90-day period was an absolute obligation and a condition precedent to his right to specific performance, or whether, under the circumstances of this case, the buyer's obligation in this respect was conditional and dependent upon seller's concurrent performance of her obligation to deposit a deed and a title policy insuring an unencumbered title.

The judgment of the trial court is based upon a holding that the buyer's obligation was absolute and that proof of its literal performance was a condition precedent to buyer's right to specific enforcement of the contract. Our holding is to the contrary. We have concluded that under the undisputed facts here presented the promises of the buyer and seller were mutual and concurrently conditional.

The contract of which specific performance was sought consists of written escrow instructions executed by both parties

on January 6, 1954, with a closing date of April 6, 1954. Seller therein agreed to convey certain land to buyer for $29,500 cash; to furnish a policy of title insurance showing her title to be free of all encumbrances except (a) certain real and personal property taxes and (b) covenants, conditions, restrictions, easements, rights and rights of way of record; and to deposit in escrow a deed to the property ''to be used when you hold for my/our account the total sales price.'' Buyer paid outside of escrow $1,000 which was applied on the purchase price, deposited $4,000 concurrently with the execution of the instructions and agreed to pay the balance of $24,500 within the 90-day period of the escrow.

Under the term ''General Instructions'' signed by the buyer and specifically approved by the seller is the following: ''Time is of the essence of these instructions. If for any reason other than my (the buyer's) failure to comply with the foregoing instructions this escrow cannot be closed by April 6, 1954, I may, by written notice to you, demand the return of money and/or instruments that I have placed therein; otherwise complete this escrow as soon as possible. If both parties fail to comply within the said time limit, then neither party shall be entitled to the return of money and/or instruments until, after demand, a five-day notice shall have been given to the other party by ordinary mail at the address given you. Party electing to cancel this escrow agrees to pay cancellation charges.''

Buyer made the $4,000 deposit and the trial court found that he had not withdrawn from the escrow any of the money deposited by him.

A few days after the opening of the escrow the escrow holder obtained a preliminary title report which showed that the real property was subject to a lease executed by the seller and her deceased husband to their son, Edward, as lessee, for a term of 10 years expiring on February 28, 1957. This lease was recorded July 21, 1947, in the office of the County Recorder. Buyer had no knowledge of the lease at the time the escrow instructions were signed but he learned about it 10 days later when the information contained in the preliminary title report was conveyed to him. Thereupon he consulted his attorney who, on February 3, 1954, addressed a letter to the seller informing her of the facts disclosed in the preliminary title report and reminding her that she had promised to convey clear title to the property, free from any lien or encumbrance, and to furnish buyer with a title policy

insuring the same. She was also advised in this letter that "my client intends to hold you to strict compliance with the said escrow agreement. Mr. Groobman is prepared to fully perform his portion of the escrow agreement, *including deposit of the balance of the purchase price, which is tendered hereby.* Demand is made upon you that you promptly comply with the escrow agreement by tendering to my client clear title to said premises, free from any lien or encumbrance, together with a policy of title insurance insuring the same." (Emphasis added.)

It should be noted that there is uncontradicted evidence that at all times during the period of the escrow, buyer was in a financial position to make the final deposit of $24,500. The foregoing letter produced no response from the seller. She did not accept the offer nor object to the mode or form of either the demand or the offer therein contained.

On March 19, 1954, still within the period of the escrow, buyer's attorney addressed a second letter to the escrow holder, with a copy to the seller, reading in part as follows: "You are advised that Mr. Groobman is ready, willing, and able to complete his performance of the escrow instructions by deposit in escrow of the balance of the purchase price, the sum of $24,500, which said sum is tendered hereby, forthwith upon execution and deposit in escrow of a quitclaim deed executed by Edward A. Kirk and terminating and releasing the lease upon the subject property. Please notify me immediately upon deposit of such executed quitclaim deed. Immediately upon receipt of such notice, Mr. Groobman will deposit the said sum of $24,500.00 into escrow." This letter, also, failed to evoke any response from the seller.

On April 9, 1954, three days after the designated closure date of the escrow, buyer commenced this action. In his original complaint buyer prayed for specific performance of the contract according to its terms, or: "If the said agreement cannot be specifically performed, that the defendant convey to the plaintiff the said real property, subject to the said lease" and the taxes, covenants, conditions, etc. set out in the escrow instructions, and for certain damages. Service of summons on the original complaint was delayed, apparently for the reason that in the meantime seller had commenced an action in unlawful detainer against her son, the tenant under the lease. To assist her, buyer "loaned" her the services of his own attorney, and she apparently gladly accepted the same. The complaint in unlawful detainer was filed April 20, 1954, and

judgment in favor of the tenant was entered May 24, 1954.

On June 9, 1954, seller addressed a letter to the escrow holder, with copy to buyer's attorney, instructing the escrow holder to cancel the escrow "within one week from the date of this letter unless in the meantime the buyer complies with the terms of said escrow and deposits the sums required by the terms of said escrow." On June 14, 1954, buyer's attorney addressed a letter to seller in which, after stating his assumption that she did not wish him to represent her further in connection with any proceedings to cancel or forfeit the lease, he stated: "You are aware that Mr. Groobman attempted to cooperate closely with you so that you would not suffer because of his specific performance action against you. Of course, such cooperation is now out of the question. I have instructed the marshall's office to attempt service upon you of Mr. Groobman's complaint for specific performance and damages. As you know the action was held in abeyance during our attempt to cooperate with you and work out a peaceful and mutually beneficial solution to the problem."

Seller at no time prior to the expiration of the term of the lease, February 28, 1957, cleared her title to the real property of the encumbrance of the lease, and no further correspondence or negotiations took place. Buyer elected not to deposit in escrow the balance of the purchase price so long as these conditions prevailed. Such deposit was the only covenant or condition of the contract of sale which buyer had not performed—there remained nothing else for him to do.

On August 29, 1956, while the lease was still in effect, buyer filed his amended complaint in which he alleged his previous demands and tenders of the $24,500 and that he "is now ready, able and willing to pay the balance of the total sales price. . . ." He further alleged: "The plaintiff has elected to accept and take title to said real property subject to the encumbrances hereinabove specifically described and to said lease and to demand damages for the withholding of said real property." By way of damages it is alleged that the fair rental value of the property is and has been $125 per month, and buyer asks that amount from February 1, 1954, until he obtains possession of the real property.

Seller relies upon, and the trial court apparently was governed by, the decision of this court in *Pitt* v. *Mallalieu* (1948), 85 Cal.App.2d 77 [192 P.2d 24]. That was an appeal from a judgment of dismissal following the sustaining of a general demurrer to a second amended complaint without leave to

amend. In Pitt, as in the case at bar, the escrow instructions specified that a part of the purchase price should be deposited in the escrow at the time of signing the instructions and the entire balance should be so deposited within 90 days thereafter and time was declared to be of the essence of the agreement. There, as here, after the 90-day period had expired and the additional deposit had not been made by the vendee, the vendor gave written notice that she considered the contract at an end.

But the cases differ in this respect: In Pitt the vendor gave notice of cancellation *before* vendee commenced his action. After the cancellation, vendee deposited $1,750 "as evidence of his good faith" and several months later filed the action. Furthermore, the cancellation, the deposit and the filing of the action took place about *two years* after the opening of the escrow.

In the instant case, buyer filed his action three days after the escrow was due to close, and thereafter, before serving summons, assisted the seller in her attempt to remove the encumbrance of the lease. It was not until after this proved futile that seller cancelled.

It is true that in Pitt the vendee sought to excuse his non-performance on the ground that he had discovered a cloud on vendor's title which was not removed and that to have made the deposit as required by the contract would have been an idle act. In holding such was no excuse this court said, at page 81: "But while the agreement implies that defendant's title might not prove merchantable and she might not perfect it within a reasonable time, the remedy for plaintiff in such an event is provided by the agreement's provision 'that the purchaser shall have the option of demanding back said deposit and shall be released from all obligation hereunder.' The requirement that plaintiff deposit the total purchase price in escrow was not conditional but was absolute. His failure to make the deposit within the 90 days after the agreement was a breach of it and terminated his rights. (Citation.) Unless the complaint alleges full performance *or an offer to perform* plaintiff's part of the contract he is not entitled to maintain his action to enforce performance. (Citation.) The fact that there was an encumbrance against defendant's title which she was not able to remove within the time fixed for performance *did not relieve the vendee from making a tender of the purchase price and de-*

*mand of performance as a condition for his action.* (Citations.)'' (Emphasis added.)

The above quoted language indicates additional and substantial distinction between the Pitt case and the case at bar. Here the allegations of the complaint and the proof show both tender and demand on the part of the buyer, as previously set forth herein. Here buyer contends that the covenant to pay the balance of the purchase price and the covenant to deliver a good and sufficient deed were mutual and concurrent. We hold that this contention is well taken. Section 1437, Civil Code, defines concurrent conditions as follows: ''Conditions concurrent are those which are mutually dependent, and are to be performed at the same time.''

We sustain buyer's further contention that since his covenant to deposit the balance of the purchase price and seller's covenant to deposit a good and sufficient deed (together with a title policy as provided for) were concurrent, buyer had the right to condition his offer to deposit such balance upon the performance by seller of her covenant to convey the premises free from the encumbrance of the lease. Buyer correctly invokes section 1498 of the Civil Code: ''When a debtor is entitled to the performance of a condition precedent to, or concurrent with, performance on his part, he may make his offer to depend upon the due performance of such condition.'' Furthermore, section 1496, Civil Code, provides: ''The thing to be delivered, if any, need not in any case be actually produced upon an offer of performance, unless the offer is accepted.''

In *Gervaise* v. *Brookins,* 156 Cal. 103 [103 P. 329], the vendor agreed to sell and convey certain lots to the vendee for $15,000, payable as follows: $3,000 cash, and the balance in 10 annual payments of $1,200 each, evidenced by 10 promissory notes, each of which was payable on or before a specified date. The vendor agreed to deliver a good and sufficient deed upon the payment of the last note. After making the cash down payment and after paying the first three notes, the vendee learned that the vendor had conveyed the land to an oil company. Taking advantage of a provision in the notes permitting him to pay the same before the specified due dates, the vendee offered to pay the remaining notes on condition that the vendor convey said lots to him. Concerning this offer, the Supreme Court said at page 106: ''He [the vendee] was entitled to the performance of this concurrent condition, and he had a right to make his own offer dependent thereon.

(Civ. Code, § 1498.) He was then, and ever since has been, ready, able, and willing, to pay the whole price upon the condition stated. His offer was therefore a good offer of performance under the law and the contract, . . .'' Such is the situation in the case at bar.

Nor, in the instant case, is the seller's contention that the offer should have been accompanied by the actual cash of any avail. As was said in *Peckham* v. *Stewart*, 97 Cal. 147, 152 [31 P. 928] : ''They [the vendees] had a right, at the time of making the offer, to demand that defendant perform his part of the contract by delivering the conveyance required by the contract, and until defendant signified his acceptance of their offer to pay by a tender of such conveyance, plaintiffs were under no obligation to actually produce before him the money mentioned in their written offer.''

In *Marshall* v. *Hilton*, 209 Cal. 531 [289 P. 165], under similar facts and dealing with the same contention as in *Peckham* v. *Stewart, supra,* the court said at page 534 : ''Here no claim is made that the tender proven extinguishes the obligation of the respondents to pay to the appellant the amount due her under the agreement of sale, but was a preliminary step to be taken before an action could be instituted by the respondents against the appellant to specifically perform the contract. In such a case 'the law does not require the purchaser to keep the tender good or deposit the money in the vendor's name and thus place himself at the vendor's mercy, since the decree, if granted, will require the plaintiff to pay the purchase money before receiving the deed.' (23 Cal.Jur. 459.) ''

In *Katemis* v. *Westerlind* (1953), 120 Cal.App.2d 537 [261 P.2d 553], this court reversed a judgment of nonsuit in an action by the purchaser for specific performance and damages. The receipt for the buyers' deposit contained certain of the terms of the contract of sale including : ''Time is of the essence of this contract; but the time for any act required to be done may be extended not more than 30 days by the undersigned agent.'' The buyers' escrow instructions provided for deposit of the balance of the purchase price prior to March 1, 1952. which seller could use provided on or before March 1 he had filed for record instruments entitling him to procure a policy of title insurance showing title vested in the buyers free, with some exceptions, of encumbrances. Seller agreed also to furnish a termite report, and if it showed infestation, to eliminate it and repair the damage at her own expense. The instructions also contained a provision that if the conditions

of escrow were not complied with prior to March 1, 1952, "you are nevertheless to complete the escrow as soon as the conditions, except as to time, have been complied with, unless written demand shall have been made upon you not to complete it." Seller agreed to be bound by the foregoing instructions prior to March 1, and further said: "I will hand you *all instruments* and money necessary for me to comply therewith, including a deed of the property described. . . ."

March 1 and 2, respectively, fell on a Saturday and Sunday. Prior to March 1 the seller deposited all instruments called for except the termite report. Buyers, having gone to Chicago to get the money, mailed the balance of the purchase price on February 29, but it was not received and deposited in the escrow account until March 3. Also the termite report, showing some infestation, and offering to perform the necessary work for $925, was deposited in escrow on the same day. On March 5 the seller wrote the escrow holder to cancel the escrow because buyers had not complied with their agreement to deposit the money prior to March 1.

In reversing the judgment of nonsuit this court held that "Nowhere in the escrow instructions is there any clear-cut language manifesting an intent to make time of the essence." (Pp. 543-544.) But the decision proceeds to point out that even if it were to be considered that time was of the essence, the nonsuit was still erroneous. It was held that the deposit of the money by buyers and the deposit of the instruments by seller were concurrent conditions, mutually dependent, each promise given in consideration for the other, and each being due at the same time, citing Civil Code, section 1437. This court says, commencing at page 545: "This principle is more elaborately set out in section 267 of The Restatement of Contracts as follows: 'Promises for an agreed exchange are concurrently conditional, unless a contrary intention is clearly manifested, if the promises be simultaneously performed . . . where by the terms of the promises (a) at the same time is fixed for the performance of each promise; or . . . (d) the same period of time is fixed within which each promise shall be performed.' . . . Applying these rules to the case at bar, it is clear that in a contract for the sale of real estate calling for concurrent performance, neither party can place the other in default unless he is fully able to perform or make a tender of the promised performance." ▉ It seems clear that the foregoing principles apply to the instant case and that deposit by the buyer of the full purchase price was not a con-

dition precedent to the deposit of a satisfactory title policy and deed by the seller.

Here the appellant buyer had the right to seek specific performance, to demand conveyance of such title as the seller possessed, and to seek damages for the defect in the title.

It was held in *Miller* v. *Dyer*, 20 Cal.2d 526 [127 P.2d 901, 141 A.L.R. 1428], (Syl. 2). ''While a vendor may not force a defective title on an unwilling purchaser or compel performance while conditions precedent to his recovery remain for him to perform (Civ. Code, §§ 3392, 3394), he cannot defend an action for specific performance on the ground that his title is not so complete as the one he agreed to convey. If the vendor has any interest in the property he has contracted to convey, the vendee, at his option, may enforce the contract with respect to whatever interest the vendor possesses, and may also receive compensation for the deficiency in performance.''

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.