## WILCOX LUMBER COMPANY *v.* BULLOCK.

1. The "perfect title" which will, under section 4927 of the Civil Code, relieve an applicant for an injunction from averring and proving the insolvency of the defendant or that the threatened damages will be irreparable, must be a duly executed paper title, the exhibition of which will show both the "right of possession" and the "right of property" in the plaintiff. A paper title not meeting these requirements, or a title resting in parol, will not bring an injunction case within the provisions of this section.
2. Under the facts disclosed by the record, the plaintiff below was not, either under the general rules of equity jurisprudence or the special provisions of the code, entitled to an injunction.

Argued January 18, — Decided January 25, 1900.

Injunction. Before Judge Smith. Wilcox county. December 29, 1899.

*Thomson & Whipple* and *J. M. Terrell*, for plaintiff in error. *J. G. Jones* and *DeLacy & Bishop*, contra.

LUMPKIN, P. J.  An equitable petition was filed by Bullock against the Wilcox Lumber Company, to enjoin it from cutting for sawmill purposes the timber growing upon four lots of land. An interlocutory injunction was granted, and the defendant excepted.  There was no allegation in the plaintiff's petition that the defendant was insolvent; and though it was in loose and general terms averred that the damages to the former would be irreparable unless the injunction issued, it plainly appears from other allegations in the petition that the damages which would flow from the threatened injury were of a character easy of computation.  Indeed, it was specifically averred that the damage to each lot would amount to $500.  It is clear, therefore, that the court erred in granting the injunction, if the case, upon its facts, does not fall within the provisions of section 4927 of the Civil Code, which in cases of this class dispenses with the necessity of alleging or proving insolvency, or that the damages will be irreparable, when "the petitioner has perfect title to the land upon which the timber is situated and shall attach an abstract of his title, stating name of grantor and grantee, date, consideration, and description of property, names of witnesses, when and where recorded, to his petition, and produce the original titles before the judge."  As to one of the four lots in controversy, the plaintiff's case manifestly did not come within the provisions of this section.  He certainly did not show a "perfect title" to this particular lot, nor did he attach to his petition any abstract of title to it, though the absence of such an abstract was made a ground of demurrer to the petition.  The only evidence of title offered at the hearing was an imperfectly executed lease which had never been recorded and which purported to have been executed by persons who, so far as appeared, had no title whatsoever.  As to the remaining lots, the following appeared:  Attached to the plaintiff's petition was a copy of a contract, executed April 20, 1893, by the plaintiff and one Bush, conveying to the defendant for sawmill purposes all the timber on a large number of specified lots of land, including the three lots just referred to.  This instrument provided that Bush and the plaintiff were "to have six years from January, 1894, in which to turpentine or to finish turpentining the timber on such

of said lots as they have not yet boxed or finished turpentining, and the said Wilcox Lumber Company agreeing not to cut the timber on such lots until the expiration of said six years or until the turpentining thereof is finished, if finished within said six years, said parties of the first part agreeing to box as many as six lots a year after this year." The contract contained the further recital that "three years from the time of boxing [was] the time to be allowed to finish turpentining." At the hearing there was evidence tending to show that Bullock, the plaintiff, at some time after the execution of this instrument, succeeded to all the rights reserved therein. There was a dispute between Bullock and the Lumber Company as to the true intent and meaning of the contract as written, the former contending that under its terms he had the right to use the timber for turpentine purposes after the first day of January, 1900, and the latter insisting that all of Bullock's rights terminated with the year 1899. Looking merely to the terms of the writing, it would seem that the contention of the company was correct. But be this as it may, the matter is left free from doubt by parol evidence, admitted without objection and as to which there was practically no dispute, showing that the rights of Bullock, under this contract as it was understood by the parties, were to end with the year 1899.

He however had another contention, the substance of which, very loosely stated in his petition, was, that after the execution of the written contract there had been between himself and the company a parol agreement, his part of which had been fully performed, extending the time for working the timber for turpentine purposes another twelve months. The evidence adduced as to this matter was decidedly conflicting, the preponderance being apparently in favor of the company. But even upon the assumption that the verbal agreement was entered into as alleged, we have, without serious difficulty, reached the conclusion that the plaintiff failed as completely on this branch of his case as upon the other, in so far as bringing it within the provisions of the above-cited section of the code is concerned. According to section 3209 of the Civil Code, a "perfect title" exists where the same person has both the "right of

possession" and the "right of property." Though a grantor may be said to have such a title against one who holds exclusively under him by virtue of a written lease, yet where in a given instance a particular conveyance shows upon its face that the grantor has parted with his title to and interest in the property thereby conveyed, and accordingly is forced to rely upon a subsequent parol agreement in order to show that a right of possession still remains in him, he can not be said to have a "perfect title" within the meaning of section 4927 of the Civil Code. It is evident to our minds that the words just quoted, as employed in that section, mean a complete and perfect paper at least capable of being recorded, if not actually recorded. The use of the terms "grantor," "grantee," "date," "consideration," "description of property," "names of witnesses," and "when and where recorded," and the requirement that the plaintiff shall "produce the original titles before the judge," are incompatible with any other idea than that which we have just expressed. Certainly, it never could have been the intention of our lawmakers to so greatly vary the existing rules relating to the granting of injunctions as to allow an alleged landowner, without averring and proving insolvency or that his damages would be irreparable, to enjoin a threatened trespass of the kind mentioned in this section, unless he was able to attach to his petition and exhibit to the court written evidence showing on its face that he had complete ownership of the property, or at least of an interest therein which could by injunction be protected from injury. When his claim to ownership rests entirely upon an alleged verbal agreement, the very existence of which is stoutly denied by his adversary, it is impossible for him to meet the requirements of the statute and thus be relieved of the necessity of averring and proving all that would have been essential before it became a part of our law.

As Bullock did not allege or prove insolvency on the part of the Wilcox Lumber Company, and in his petition practically admitted that his damages would not be irreparable, he was not entitled to an injunction under the general principles of equity jurisprudence; and having failed to show that he was so entitled under the special statute upon which we have herein

commented, we are constrained to hold that the trial judge erred in granting the injunction.

*Judgment reversed.   All the Justices concurring.*