A. M. HENDERSON, Trustee, *et al.*, Appellants, v. ED BEATTY *et al.*, and A. M. HENDERSON *et al.*, Appellants, v. WILLIAM BEATTY *et al.*

124  163
127  277
124  163
132  324
e133  612

Contract of sale of land: CONSTRUCTION: INTEREST TO BE CONVEYED.
1 A contract for the sale of land providing for the purchase and sale of all the grantor's "right, title, and interest" is a contract to convey simply such interest as he had in the premises, and a further provision to execute and deliver a warranty deed as "above" agreed, should not be construed as enlarging the contract so as to require a conveyance in fee, but rather as limited by the granting clause.

Same: Where a contract provides for a conveyance simply of the
2 grantor's interest in the premises and also for payment on presentation of an abstract showing good and perfect title, the agreement should be construed as requiring a conveyance of the title, as disclosed by the abstract, by special warranty deed.

Act of agent: ACQUIESCENCE OF PRINCIPAL: EVIDENCE. In an action
3 for specific performance of a contract to convey land, the evidence is considered and held to justify the presumption that the principal acquiesced in the agent's statement to his grantors, that he was willing to withdraw from the contract.

Specific performance: ABANDONMENT OF CONTRACT. An oral agree-
4 ment by either party to abandon a contract for the sale of land, which was acquiesced in will defeat specific performance.

*Appeal from Palo Alto District Court.*— HON. A. D. BAILIE, Judge.

MONDAY, MAY 9, 1904.

ON the 19th day of November, 1899, A. M. Henderson, as a trustee for himself and T. T. Henryson and M. Henderson entered into written contracts with Ed Beatty for the purchase of one hundred and forty-eight acres of land situated in sections 19 and 20 in township 97 north, of range 34, in Palo Alto county, and with Wm. Beatty for ninety-nine and three-fourths acres in the south half of section 19 in the same township. The price agreed upon was about $21 per acre, though the land was then worth at least $28 per acre. In the contract with Ed Beatty the latter " agrees to sell to the party of the second part, on the performance of the agreement of the party of the second part, as hereinafter mentioned, all his right, title and interest in and to the real estate situated in Palo Alto county, Iowa, to wit: The one hundred and forty-eight acre tract of land recently patented to said Ed Beatty in Sections Nineteen and Twenty (19 and 20) in Township Ninety-seven (97), Range 34. The said first party not having his final receipt with him and is unable to give a more definite description, for the sum of Thirty-one Hundred and Eight ($3,108) Dollars payable as hereinafter mentioned. And said party of the second part, in consideration of the premises hereby agrees to and with the party of the first part to purchase all his right, title and interest in and to the real estate above described for the sum Thirty-one Hundred and Eight ($3,108) Dollars, and to pay said sum therefor to the party of the first part, his heirs or assigns, as follows: Three Hundred ($300.00) Dollars, on the execution of this agreement, which amount is to be deposited in the Iowa Savings Bank, at Ruthven, Ia., and the balance of Twenty-eight Hundred and Eight ($2,-808) Dollars as follows, to wit: As soon as said first party shall present his deed and abstract at said bank and not later than March 1st, 1900, which abstract shall

show a good and perfect title in first party. A discount of 6 per cent. per annum to be allowed to said second party for any money paid prior to March 1st, 1900. Possession to be given March 1st, 1900." After enumerating the many conditions usually found in printed forms, the contract closes with a stipulation to execute a warranty deed of the premises. The contract with Wm. Beatty was the same, except that $200 was to be deposited in the bank and the description was definite. The land was a part of that omitted from the original government survey near Lost Island Lake. See *Grant v. Hemphill,* 92 Iowa, 218. Subsequent to that decision it was surveyed as a part of the public domain, and the Beattys entered the respective tracts under the homestead laws, and obtained receiver's receipts therefor. Thereupon the Chicago, Milwaukee & St. Paul Railway Company intervened, claiming the land as a part of the original grant by the government in aid of the construction of its road. This contest was pending at the time the contracts were executed, though whether made known to the purchasers is in dispute. They did know, however, that the patents had not been received. Shortly afterwards abstracts were furnished, showing the true condition of the title, and on February 2, 1900, the Beattys tendered A. M. Henderson and Henryson warranty deeds, and demanded the purchase price. They refused to pay any money. No communication was had between the parties thereafter until the beginning of this action January 4, 1902. On July 12, 1900, the Beattys stipulated to withdraw from the contest with the Chicago, Milwaukee & St. Paul Railway Company on condition that the company obtain title and sell the land to them at $10 per acre. The company acquired a patent from the government July 9, 1901, and is now ready to convey the land to the party entitled thereto upon the payment of the price agreed upon. Separate actions for specific performance were begun, and by agreement were tried together. On hearing the petitions were dismissed, and plaintiffs appeal.— *Affirmed.*

*Carr, Hewitt, Parker & Wright* and *Soper, Alexander & Soper,* for appellants.

*E. A. Morling* and *B. E. Kelly,* for appellees

LADD, J.— Each of the defendants stipulated " to convey all of his right, title, and interest in and to the real estate," and the plaintiffs promised " to purchase all his right, title, and interest in and to the real estate above described." From this it cannot be inferred that the vendors had any purpose of conveying anything more than the interest or estate of which they were then seised or possessed. Had the vendees intended to buy a particular estate, or an estate in fee simple, they should have so stipulated in their agreement. *Van Rensselaer v. Kearney,* 11 How. 299 (13 L. Ed. 703). The bargain of necessity had reference to the thing to be acquired, and the consideration was in all probability regulated accordingly. When one undertakes to convey whatever right, title, and interest he may have in land, this should not be enlarged upon so as to require a transfer of the land itself. The character of deed to be executed is prescribed in the clause of the contract providing that: " If such sums of money interest and taxes are paid as aforesaid promptly at the time aforesaid the party of the first part will, upon receiving such money and interest, execute and deliver at his own cost and expense, a warranty deed of said premises, as above agreed." Looking " above," it appears that the conveyance was to be only of the right, title, and interest in the premises. The covenant in such a deed is uniformly construed as limited by the granting clause, unless a contrary intention appears. In *McNear v. McComber,* 18 Iowa, 12, the rule is thus stated: " When the grant is simply of the right, title, and interest of the estate to be conveyed, it passes no other estate or interest than what the party possessed at the time; that is to say, the covenant of warranty does not have the effect to enlarge the

*Marginal note:* 1. CONTRACT FOR SALE OF LAND: construction; interest to be conveyed.

estate granted, but is qualified and limited to just what interest the grantor had in the premises. A failure of title and eviction do not constitute a breach of warranty." *Rogers v. Chase,* 89 Iowa, 468; *Reynolds v. Shaver,* 59 Ark. 299 (27 S. W. Rep. 78, 43 Am. St. Rep. 36); *Hoxie v. Finney,* 16 Gray, 332; *Hanrick v. Patrick,* 119 U. S. 156 (7 Sup. Ct. 147, 30 L. Ed. 396). Says Warvelle, in his work on Vendors (section 420): " No rule is better established or more generally recognized than that which provides that the estate granted by a deed is neither enlarged nor diminished by the covenants of title therein contained, whether expressed or implied."

But the contract also stipulated that the balance of the purchase price should be paid " as soon as first party shall present his deed and abstract at the said bank, and not later than March 1, 1900, which abstract shall show a good and perfect title in first party." The title in real estate, according to Blackstone, is the means whereby a man holdeth land. A perfect title is one which shows the absolute right of possession and of property in a particular person. *Wilcox Lumber Co. v. Bullock,* 109 Ga. 532 (35 S. E. Rep. 52). In *Turmer v. McDonald,* 76 Cal. 177 (18 Pac. Rep. 262, 9 Am. St. Rep. 245) the court, having reference to "perfect," said: " A perfect title must be one that is good and valid beyond all reasonable doubt." In that case counsel had conceded that a title, to be good, should be " free from litigation, palpable defects, and grave doubts, should consist of both legal and equitable titles, and should be fairly deducible of record "; and in *Sheehy v. Mills,* 93 Cal. 288 (28 Pac. Rep. 1046) the foregoing requirements were held to be absolutely necessary in order to fully satisfy the covenant of a perfect title. See, also, *Sturtevant v. Jaques,* 14 Allen, 523. While the vendors did not contract to convey such a title, they did agree that their abstracts should exhibit it in them. This would demonstrate to the purchasers that they

2. SAME.

were acquiring a perfect title, even though the sellers might not covenant by their warranty deed that it be such. There is no inconsistency in the several provisions of the contract. The conveyance stipulated was, in effect, a special warranty deed of the land, the title to which was to be exemplified by the abstract showing it to be perfect.

II. It does not follow, however, that these contracts should be enforced. When the deeds were tendered to Henderson and Henryson in February, 1900, and the purchase money demanded, they refused to make payment. Thereupon Wm. Beatty inquired why, and, no reason being stated, remarked, " You can't have the land and the money, too." Ed Beatty then declared, in substance, that the contracts were at an end, and nothing more would be done under them. To this either Henderson or Henryson responded, in substance, " All right, we are ready to quit if you are." The testimony of the Beattys is corroborated by four other witnesses, and by the further fact that plaintiffs did not communicate with them again for nearly two years. In the meantime the land had nearly doubled in value. On the other hand, both Henderson and Henryson and the cashier of the bank deny that any response was made to Beatty's statement. In March following Henryson wrote the cashier that they would be ready on a day's notice, and would insist on performance, and requested that the Beattys be so advised. In another letter in May he indicated their readiness, and the money originally left with the bank was allowed to remain until the trial. Of course, these latter matters are inconsistent with the notion that there was an abandonment. But plaintiffs might have changed their minds, or failed to appreciate the force of what had been said. At any rate, the trial court heard the witnesses testify, and was in a better situation than are we to pass upon their credibility, and we are not inclined to reject its finding that the conversation occurred as related by the six witnesses, rather than as told by the three. It is argued

*3. ACT OF AGENT: acquiescence of principal; evidence.*

that, even if this be true, M. Henderson cannot be bound. The contracts were executed by A. M. Henderson as trustee for the others, and it does not appear that the Beattys knew that M. Henderson had any interest in the transaction. The balance of the purchase price to be paid " not later than March 1, 1900, was neither paid nor tendered." By his silence under the circumstances disclosed he must be presumed to have acquiesced in what his agent did.

Appellants contend, however, that such a contract, as it is required to be in writing, cannot be set aside by a parol 4. SPECIFIC PER-  agreement. It is well settled that, where either FORMANCE: party has orally agreed to abandon or rescind abandonment of contract.  such a contract, and this is acquiesced in, he may not thereafter maintain an action for its enforcement. Warvelle on Vendors, section 759; *Lasher v. Loeffler,* 190 Ill. 150 (60 N. E. Rep. 85); *Mahon v. Leech,* 11 N. D. 181 (90 N. W. Rep. 807); *Huffman v. Hummer,* 18 N. J. Eq. 83. Even if the plaintiffs did not regard the contract as terminated, they must have known that the Beattys so understood. The defendants had entered into the agreements in order to obtain money to engage in raising cattle. They were selling land which they supposed they owned, and not with a view of subsequently acquiring title. Upon discovery that they were not likely to obtain the land, they were compelled to compromise and buy it from the railroad company. In the meantime not a cent had been paid them on the purchase price, and before this suit was begun the land had nearly doubled in value. Appellants explain their delay by evidence that they did not ascertain that the railroad company had acquired title and contracted to sell to the Beattys until shortly before the beginning of the suit. But no attention had been given the matter for nearly two years, though the balance of the purchase price was to be paid by March 1, 1900, and by silence they had confirmed in the vendors the notion that the contract was at an end. In Fry on Specific Performance, section

737, it is said that: "Where one party to a contract has given notice to the other party that he will not perform it, acquiescence in this by the other party for a comparatively brief delay in enforcing his right will be a bar." Two decisions are cited in support of the text — *Heaphy v. Hill,* 2 S. & S. 30, and *Watson v. Read,* 1 R. & My. 236. In the former about two years had elapsed after the defendant had refused to execute a lease for a long term, and, as no excuse save that the attorney had mislaid the papers was offered, the bill was dismissed. In the latter the defendant on April 7, 1827, notified the vendor that he objected to the title as exhibited by the abstract, and abandoned the contract, and on May 1st demanded the return of the deposit. This was refused, but no steps were taken to enforce the contract until April 25, 1828. The bill was dismissed because of the unreasonable delay. See *Giltner v. Rayl,* 93 Iowa, 20. The rule is thus stated in 2 Pomeroy's Equity Jurisprudence, section 927: "If a plaintiff, instead of obtaining this remedy promptly as soon as he was able, should unnecessarily delay, and should not bring a suit until by his delay or change of circumstances the price or subject-matter had become inadequate, a specific performance should be refused." See, also, *Newberry v. French,* 98 Va. 479 (36 S. E. Rep. 519); *Mowry v. Kirk,* 19 Ohio St. 375; *King v. Raab,* 123 Iowa, 632.

In view of the circumstances disclosed, we think the equities with the defendants, and that their petitions were rightly dismissed.— AFFIRMED.