EDWARD H. HYMERS, Respondent, v. JOSEPH W. BRANCH, EXECUTOR, Appellant.

February 11, 1879.

A purchaser is not bound to take a doubtful title; and a court will not decree specific performance of a contract to purchase real estate when the agreement is for a good title and all reasonable doubt as to the title is not removed; and though the court may entertain a favorable opinion of the title, yet if that opinion may be fairly questioned by competent persons it will not decree specific performance.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

IRWIN Z. SMITH, for appellant, cited: *Ivory* v. *Murphy*, 37 Mo. 19; *Becker* v. *St. Charles*, 37 Mo. 19; *McGowan* v. *West*, 7 Mo. 570.

HORATIO D. WOOD, for respondent, cited: Fry on Spec. Perf. 573–579, note 2; *Luckett* v. *Williamson*, 31 Mo. 54; *Watts* v. *Waddell*, 1 McLean, 200; *Bates* v. *Delaven*, 5 Paige, 299; *Gaus* v. *Renshaw*, 2 Barr, 34; *Brooklyn* v. *Armstrong*, 45 N. Y. 234.

BAKEWELL, J., delivered the opinion of the court.

This is an action to recover $1,000 paid by plaintiff to the defendant's testator. The petition alleges that Gartside, in November, 1875, agreed with the plaintiff to convey to him, by indefeasible title, a lot in the city of St. Louis on which was an ice-house, for $10,000, of which $1,000 was cash, and the balance in periods running through four years; that plaintiff made the cash payments and performed the contract on his part, but that deceased failed to comply with the agreement, and was incapable of doing so because the property in question is a public wharf, and subject to be so used by adjoining property-holders.

The answer admits the contract and the cash payment, and denies the other material allegations.

The cause was tried by the court. There was a finding and judgment for plaintiff, and defendant appeals.

It appears from the testimony that one Buchanan owned a tract of land fronting on the river in the northern part of the city, and having subdivided the tract into blocks, streets, alleys, and lots, by a plat approved by the city engineer, and named it Buchanan's addition, he offered the lots for public sale according to the plat, on October 1, 1867. The plat showed a wharf four hundred feet wide, on the river front, bounded east by block 1 of the addition. The eastern boundary of block 1 is a prolongation of the western boundary of the city wharf. Lithographic plats of the property, showing the wharf four hundred feet wide, were distributed at the sale, and the line of wharf marked by flags. Both Buchanan and the auctioneer represented at the sale that the wharf was as stated in the plats; and the auctioneer says that he enlarged at the sale on the advantages of the wharf, and that he sold the lots in block 1 at double prices on account of the wharf. At the time of the sale, the city had taken steps to condemn the levee as marked on the plat, and for a considerable distance north and south, but these proceedings fell through. The plat was subsequently recorded. But this was not done till after the sale. By deeds of the date of the auction sale (October 1, 1867), Buchanan conveyed to one Shaw lots 3 and 4, and to Redemeyer lot 1 of block 1. These deeds were recorded respectively March 29, 1869, and October 20, 1872, and describe the lots as fronting "on the west line of wharf 400 feet wide." By deed of January 29, 1868, recorded May 20, 1868, Buchanan conveyed to Wigand lots 10 and 11, block 1, described in the deed as fronting on the west line of the wharf.

The lot in controversy lies immediately in front of lots 1, 2, 3, 4, and 5, of block 1, on that part of the addition marked "wharf 400 feet" on the plats, and leaves a space of seventy feet between its western line and the eastern

line of the last-named lots. It was purchased by Smith and Gartside of Buchanan, in 1872, for the purpose of building an ice-house. When they began to build the ice-house, the owners of lots 1, 2, 3, 4, and 5 remonstrated, and said the land was a wharf. Smith and Gartside then had the title examined by an expert, who gave them a written opinion that, by reason of the wharf, they had no good title to the lot. However, they proceeded with the ice-house, and spent $13,000 upon it. In September, 1875, Smith conveyed the ice-house property to Gartside. No further objection was made to Smith by the abutting owners up to the time he sold. One Stanard, who had heard the announcements about the wharf at the auction sale, and who subsequently purchased the lots originally purchased by Shaw by deed bounding the property by the wharf, testified that the ground in front of block 1 was then used as wood and lumber yards and as a private landing. Redemeyer and Stanard claim the front as a wharf; and Redemeyer and Shaw claimed it as a wharf till Shaw sold. Buchanan says that he has been in possession of the property marked "wharf" on his plats, renting it for landing purposes, and paying taxes on it; Gartside and Smith and their representatives having been in possession, however, of the ice-house lot.

The plat of Buchanan's addition was approved by the city engineer on September 18, 1867, as being in accordance with the plan of the city. It was recorded on October 18, 1867. The recorded plat is the same as that exhibited at the sale, except that it has no reference to the sale, and except that it has a dedication made upon it, on the day of its record, of all the streets and alleys described in the plat, to public use.

It is claimed by appellant that this was no dedication of the wharf four hundred feet wide marked on the plat. There might perhaps be a question as to that. It depends upon the meaning of the word "wharf." The ordinary meaning of

the word "wharf" is, " a broad, plain place, near some river, creek, or haven, to lay goods and wares upon, that are brought to or from the water." Tomlins's L. Dic., ad verb. In St. Louis, the public wharf, in its upper part at least, is a street. There may, to be sure, be private wharves; but there may also be private alleys and private streets. It might be contended with considerable plausibility at least, that there was here a dedication of the wharf. But, however that may be, there seems to have been no acceptance by the city, and no user.

But where proprietors of city property lay it out into lots, with streets and avenues running through it, and sell their lots with reference to such plat, such conduct is held to be a dedication to the public, and they cannot afterwards resume their control over them. This, says Judge Scott, delivering the opinion of the court in City v. Draper, 15 Mo. 640, is settled; and he adds that the principle is equally applicable to a public square, commons, or a landing. And in Becker v. St. Charles, 37 Mo. 1, it is held that where one grants lands calling for a highway, though not estopped against the public till user is shown, he is estopped as to his grantees. Farnsworth v. Taylor, 9 Gray, 166.

It is not necessary, for the purposes of this action, to determine the question whether or not Stanard or Redemeyer could successfully initiate proceedings to oust the occupier of the ice-house lot. It is enough if it be clear that there may be a reasonable doubt as to his title. A title free from reasonable doubt may be forced upon an unwilling purchaser, but a purchaser is not bound to take a doubtful title; and if the vendor finds that he cannot make such a title as the vendee is bound to accept, he should refund what he has received. As is said by Chief Justice Gibson in Gans v. Renshaw, 2 Pa. St. 34, adopting the language of the Master of the Rolls in Sedgwick v. Hargrave, 2 Ves. sr. 59, the title of the vendor must be, like Cæsar's wife,

not only pure, but unsuspected; and though the vendee is not at liberty to speculate in probabilities, he is not bound to take property encumbered with a law-suit. If defendant would be exposed to a law-suit, with the least chance of losing it, he should not be held to his bargain.

If there is any reasonable chance that some third person may raise a question against the owner of the estate after completion of the contract, the courts consider this a circumstance which renders the bargain a hard one for the purchaser, and one which they will not, in the exercise of their discretion, compel him to execute. *Seaman* v. *Vawdrey*, 16 Ves. 390; *Edwards* v. *McLeay*, 2 Swanst. 287.

The courts concern themselves with practical certainties and practical doubts. They will not compel specific performance where the agreement was for a good title and there is a reasonable doubt. Nor will they, in all cases, decide for or against the doubtful title, but they allow a class of titles which, without affirming them to be bad, they leave as doubtful. And this is not unreasonable; for if there be a question as to the title, the decree in the suit for specific performance will not necessarily set it at rest. The question of title may be litigated again, perhaps by some third person not a party to the action and not bound by the decision. The court, in the suit for specific performance, has neither heard the evidence which such parties might adduce, nor the arguments which they might urge; and it will not decree specific performance of a contract to purchase real estate, where the agreement is for a good title, and all reasonable doubt or question as to the title is not removed; and though the court entertain an opinion in favor of the title, yet, if it is aware that that opinion may fairly be questioned by competent persons, it will refuse a decree for specific performance. In this case the doubt as to the title is not unreasonable, to say the least. Fry. on Spec. Perf., sects. 573–579.

The judgment of the Circuit Court is affirmed. Judge Lewis absent; Judge HAYDEN concurs.