[No. 11181.  Department One. — May 19, 1888.]

R. B. TURNER, RESPONDENT, v. MARK L. McDONALD, APPELLANT.

VENDOR AND VENDEE — CONTRACT FOR SALE OF LAND — PERFECT TITLE. — The title to land is not perfect, within the meaning of a contract for the sale thereof, unless it be free from litigation, palpable defects, and grave doubts, and consists of both the legal and the equitable titles, and is fairly deducible of record.

ID. — CONVEYANCE BY ATTORNEY — INTEREST OF MORTGAGEE. — Where the authority of an attorney in fact to sell land is limited to such property as the principal owned or was interested in at the time of the exe-

cution of the power, a deed subsequently made by the attorney for land which the principal then owned, but in which his only interest at the time of the execution of the power was that of a mortgagee, does not convey a perfect title within the meaning of the rule.

ID. — FOREIGN WILL — FAILURE TO PROBATE IN THIS STATE. — The title to lands in this state is not perfect, within the meaning of the rule, when it is acquired through a quitclaim deed from a devisee under a foreign will which has never been admitted to probate in this state.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*James A. Waymire,* for Appellant.

*Edward P. Cole,* for Respondent.

BELCHER, C. C. — On the nineteenth day of February, 1879, the defendant contracted to sell to one Woodworth a lot in the city of San Francisco for twenty thousand five hundred dollars, and received from him on account, and as a deposit to secure the sale, the sum of five hundred dollars. The contract was made "upon the following terms, to which both parties are mutually bound: Ten days are to be allowed for legal search of title. If it is not found to be perfect, the deposit, for which this is a receipt, is to be returned; if the title is found perfect, and the sale is not consummated in accordance with the above terms, the deposit is to be forfeited."

Within the ten days allowed, Woodworth submitted an abstract of title to John R. Jarboe, an attorney at law, for examination, and was ready and willing to complete the purchase if Jarboe pronounced the title good. After examination Jarboe decided that the title was not perfect, and he informed defendant of his decision about the time it was made. Woodworth then demanded from the defendant a return of his deposit, and the defendant refused and neglected to pay back the money, but did

not, so far as appears, offer or tender to him any deed of the property.

Woodworth assigned his claim to the plaintiff, and this action was brought to recover back the five hundred dollars, with interest.

The court below gave judgment for the plaintiff, and the defendant appealed.

In support of the appeal, it is urged that the defendant's title was in fact perfect, and the court should have so found from the evidence.

A perfect title must be one that is good and valid beyond all reasonable doubt. Whether the title in particular cases is good or not is a question which it is often difficult to determine, and one upon which lawyers and judges sometimes disagree. "Though the court," it has been said, "may entertain an opinion in favor of the title, yet if it be satisfied that that opinion may fairly and reasonably be questioned by other competent persons, it will refuse specific performance. Thus, in a case before Sir John Leach, he expressed the strong inclination of his opinion to be in favor of the title, and yet refused the relief sought by the plaintiff; and in the recent case of *Pyrke* v. *Waddingham*, in which the Vice-Chancellor Turner discussed the subject now before us, he expressed an opinion in favor of the title, but nevertheless dismissed the vendor's bill, with costs. Still less, of course, will the court force a title on a purchaser in opposition to the decision of another court, though it may think that decision to be wrong." (Fry on Specific Performance, sec. 579; see also *Richmond* v. *Gray*, 3 Allen, 25; *Sturtevant* v. *Jaques*, 14 Allen, 523.)

It was shown on the trial that the title to the lot in controversy here was, in January, 1855, in one Stevens, and that on the eighth day of that month he mortgaged the lot to one Charles S. Tripler. The mortgage was by a deed absolute in form. On the third day of December, 1862, Tripler executed a power of attorney to one Abell,

giving him power to sell any real property which he (Tripler) then owned, or was interested in, in the state of California. On the 20th of December, 1862, Tripler commenced suit to foreclose his mortgage, and on the 10th of July, 1863, he bought in the property under his decree of foreclosure. On the 8th of October, 1863, Tripler, by Abell, his attorney, made a quitclaim deed of the lot to Hutchinson, defendant's grantor. On the 13th of January, 1864, Tripler received his sheriff's deed. Some time in 1866 Tripler died in the state of Michigan, leaving a last will, by which he gave all his property to his surviving wife, Eunice Tripler, " in confident expectation that the same will be expended in her own comfortable support, and in the education and maintenance of our children, leaving it entirely discretionary with her to make such provision for our children as she, in the exercise of her judgment, may deem best." While the will speaks of the children, it nowhere gives the names, ages, or number of them. The will was admitted to probate in Michigan, but was never probated in this state, and there was no proof as to whether there were any debts against the estate here or not. In March, 1869, Eunice Tripler executed a quitclaim deed of the lot to defendant's grantor.

It is admitted that a title to be good " should be free from litigation, palpable defects, and grave doubts; should consist of both legal and equitable titles, and should be fairly deducible of record."

Upon the showing made, it seems to us that defendant's title was not free from grave doubts as to its sufficiency. When Tripler made his power of attorney to Abell he did not own and had no legal interest in the lot. It is settled law in this state, that a deed absolute, if intended as a mortgage, does not transfer title between the parties to it. (*Cunningham* v. *Hawkins*, 27 Cal. 606; *Taylor* v. *McLain*, 64 Cal. 514; *Healy* v. *O'Brien*, 66 Cal. 519; Code Civ. Proc., sec. 744, which is the same as section 260 of

the old Practice Act.)    But if Tripler had no interest in the lot when he made his power of attorney to Abell, can it be said, beyond doubt, that the deed afterwards made by the attorney conveyed any interest therein?

Again, when one dies leaving property in this state, that property must be disposed of according to the laws of this state.    And if he left a will, that will must be proved here before it can affect property situated here.    Now, can it be said, beyond doubt, that Mrs. Tripler could convey by quitclaim deed a good title to the lot in question before the will, under which she claimed it, was produced and proved here?

It seems to us that these questions must be answered in the negative, and that it must follow, therefore, that defendant's title was not " fairly deducible of record."

There is no other question requiring special notice. We find no error in the record, and therefore advise that the judgment and order be affirmed.

HAYNE, C., and FOOTE, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment and order are affirmed.