[Civ. No. 677.  Second Appellate District.—July 21, 1909.]

## D. C. REED, Appellant, v. J. W. SEFTON, Respondent.

OPTION TO PURCHASE LAND—ACTION FOR MONEY PAID AND FOR BREACH—MARKETABLE TITLE—ABSENCE OF PROBABLE LITIGATION.—An action will not lie to recover money paid under an option to purchase land and to recover damages for its breach, where the abstract of the record furnished to the proposed purchaser shows a marketable title free from probable litigation to a moral certainty.

ID.—OPINION OF ATTORNEY INADMISSIBLE.—The opinion of an attorney is not admissible in determining the question whether or not a title is marketable.

ID.—RECORD OF OLD BOND FOR DEED—DEFAULT IN PAYMENTS FOR TWENTY-EIGHT YEARS—CONSTRUCTIVE ABANDONMENT—TITLE FROM OWNER.—Where the abstract of title showed the record of an old bond for a deed, under which there has been a default in payments for twenty-eight years, and a constructive abandonment of which is declared by a deed from the owner, from whom a marketable title appears of record for twenty-six years, during which the property has greatly enhanced in value, such title appears to be free from probable litigation, at law or in equity, to a moral certainty.

ID.—SPECIFIC PERFORMANCE—LAPSE OF TIME—CHANGED CIRCUMSTANCES.—Time is material to the specific performance of a contract for a deed, whenever, from the change of circumstances, a specific performance such as would answer the ends of justice between the parties has become impossible.

ID.—CAUSE OF ACTION FOR RETURN OF MONEY BARRED BY LIMITATION.—When defendant tendered to plaintiff a good and sufficient deed, and plaintiff refused to accept it, the cause of action for a return of the money paid for the option, if any, accrued, and the statute of limitations then began to run, and barred an action not begun until more than two years thereafter.

APPEAL from an order of the Superior Court of San Diego County, denying a new trial.  E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

Luce, Sloane & Long, for Appellant.

Stearns & Sweet, for Respondent.

TAGGART, J.—Action to recover money paid for option to purchase real estate, and for damages for failure of vendor to perfect title and make conveyance. Judgment was for defendant, and plaintiff appeals from an order denying his motion for a new trial.

On January 8, 1904, in consideration of the sum of $500, defendant gave plaintiff an option to purchase within twenty days from that date a block of land in the city of San Diego. The sum paid ($500) was to be applied upon purchase price of $15,000, if the purchase was completed, otherwise to become forfeit, "for liquidated damages for such failure to complete said purchase." Time was made of the essence of the option. On January 28, 1904, the plaintiff paid defendant the further sum of $1,000 for an extension of said option for fifteen days upon the same terms; and again on February 12, 1904, in consideration of the payment of an additional sum of $1,000 by plaintiff to defendant, a further extension of thirty days upon the same terms was granted. The same form of forfeiture for failure to complete the purchase is provided as in the original option and time is made of the essence of both these extensions of the option.

The court finds that prior to the expiration of the time given by the last-named extension of option to purchase defendant furnished to plaintiff an abstract of title to the block of land in question, which contained a bond for a deed to said premises, whereby A. E. Horton, then owner thereof, on the thirty-first day of March, 1874, bound himself to convey the block in controversy to one O. S. Fowler of Boston, state of Massachusetts, for a consideration of $1,400, $27 whereof was paid, and the residue to be paid, $1,000 on or before July 1, 1874, and the balance fifteen months from the date of the writing. Horton agreed to convey by good and sufficient deed upon the full performance of all and every condition to be performed by Fowler. No further time limitation appeared in the instrument, which was recorded April 1, 1874. No conveyance under this bond was ever made, and no relinquishment of the rights of Fowler thereunder shown, and on November 5, 1877, Horton conveyed the land to one Babe, who thereafter, on June 10, 1883, reconveyed to Horton, and on August 5, 1884, Horton conveyed to one Hoitt, through whom defendant deraigns title.

As found by the court, there was attached to the abstract mentioned an opinion of title given by N. H. Conklin, then practicing law in San Diego, to defendant under date of December 7, 1898, wherein it is said: "I consider the title a little questionable until the facts of the Fowler heirship are ascertained and his rights determined, either by an instrument of writing or a decree of court." Also, an opinion given by McDonald & McDonald, a firm practicing law in San Diego at that time, under date of January 8, 1899, certifying the title to be good, and as to the bond in question saying that "although not released or canceled of record, is nevertheless upon the face of the record no longer a lien or encumbrance upon the property by reason of being barred by the statute of limitations."

Plaintiff, prior to March 12, 1904, notified defendant that his title to the property was not a good and marketable one, owing to the cloud thereon created by said bond, and stated that he was ready, willing and able to carry out the option upon the removal by defendant of said cloud, and demanded that defendant either perfect the title to said premises by removing said cloud or repay the plaintiff the amounts paid on the option. Defendant refused to either remove the alleged cloud or repay said amounts; hence this action, begun November 12, 1906. In addition to sustaining defendant's contention that the bond mentioned did not prevent him from conveying a good and marketable title to the lands described in the contract, the court found plaintiff's first cause of action to be barred by the statute of limitations.

The contention of appellant that the opinion of the attorney expressing doubt as to the sufficiency of the title to the premises, which was attached to the abstract, may be considered in determining whether or not he was justified in refusing to accept the title displayed by the abstract, is disposed of by the holding of the supreme court in *Winter* v. *Stock*, 29 Cal. 408, 413, [89 Am. Dec. 57], that the correctness of the advice of counsel is a risk assumed by the party who procures it, and that such an opinion is not evidence admissible upon the issue, Is the title tendered by the vendor marketable? (See, also, *Montgomery* v. *Pac. C. L. Bureau*, 94 Cal. 290, [28 Am. St. Rep. 122, 29 Pac. 640].)

The difference between the opinions of the two attorneys hereinabove referred to suggests the views of the respective parties here as to whether or not the title of defendant was so encumbered as to justify a court of equity in refusing to compel specific performance of the contract. While the early cases draw some distinction between the rule to be applied in an action at law to recover back the portion of the purchase price paid and that applied in a suit in equity for specific performance, we take it that the equitable rule is now applicable whether the action be one to recover the money or enforce the contract. (*Moore* v. *Williams,* 115 N. Y. 586, [12 Am. St. Rep. 844, 22 N. E. 233] ; Maupin on Marketable Titles, sec. 286].)

A covenant or contract for a perfect title requires the tender of a title "free from litigation, palpable defects, and grave doubts, and should consist of both legal and equitable titles and be fairly deducible from the record." (*Turner* v. *McDonald,* 76 Cal. 177, [9 Am. St. Rep. 189, 18 Pac. 262] ; *Sheehy* v. *Miles,* 93 Cal. 288, [28 Pac. 1046] ; *Gwin* v. *Calegaris,* 139 Cal. 384, 387, [73 Pac. 851].) While the option given by defendant to plaintiff contains no covenant for a perfect title, or for record title at all, both parties present the case upon the theory that the rule declared in *Turner* v. *McDonald* is applicable, and that plaintiff is entitled to recover unless the title tendered by defendant measures up to the standard fixed by that case.

The cloud here urged is not based upon any question of doubt as to the legal title of defendant. The bond to Fowler must be considered in the light of an encumbrance on the title and as a cause of action vested in Fowler, or his successors in interest, and a right in him or them to call in the aid of a court of equity to enforce any right he or they may have under the bond. While such a defect may be distinguished from those presented by cases in which a link in the chain of title is missing, or there is an entire absence of record evidence connecting the vendor with the paramount source of title, yet, even when tested by the rule applied in such cases, in so far as they furnish any aid in determining the question before us, we are of opinion that the finding of the trial court that defendant's title was a marketable one should be sustained.

Of the obstacles to the tender of a good title mentioned in *Turner* v. *McDonald*, 76 Cal. 177, [9 Am. St. Rep. 189, 18 Pac. 262], we have to do only with those arising under the clause "free from (probable) litigation." In classifying the cases in which titles are considered doubtful for this reason and those which are not, Maupin distinguishes those cases as doubtful: "Where the probability of litigation ensuing against the purchaser in respect of the matter in doubt is considerable; or, where there is a 'reasonably decent probability of litigation.' The court, to use a favorite expression, will not compel the purchaser to buy a lawsuit. If there be any reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, the title will be deemed unmarketable." As not doubtful: "Where the probability of litigation ensuing against the purchaser in respect of the doubt is not great, the court, to use Lord Hardwicke's language in one case, 'must govern itself by a moral certainty, for it is impossible in the nature of things there should be a mathematical certainty of a good title.' " (Maupin on Marketable Titles, secs. 284, 285.)

In the same sections this author also distinguishes the rules to be applied where the question of the doubtfulness of the title is to be considered with relation to a title resting upon a presumption of fact. Appellant relies in part upon cases resting upon such a condition of fact. These rules, however, are not applicable to the title of defendant here, and should not be considered in connection with the probability of litigation arising on the Fowler bond, since the distinction drawn by them is between marketable and nonmarketable titles, and the marketability of the Fowler equity is not before us. The bond might be a cloud sufficient to destroy the marketability of defendant's title without being itself marketable, and so it might support a cause of action for the recovery of the money advanced by Fowler without being sufficient to sustain an action in equity for its specific performance. The probability of a court of equity entertaining such an action as that last mentioned is extremely remote, but it is only in view of such a contingency that the bond can affect the rights of a purchaser of the property.

It was more than twenty-eight years after the time for the last payment on the Fowler bond, and over twenty-six years after Horton by conveying the property to another gave constructive notice to Fowler and his successors in interest that he regarded the claim of Fowler as abandoned, that the contract between plaintiff and defendant was entered into. Says the supreme court of this state, quoting from Judge Story in *Taylor* v. *Longworth,* 14 Pet. 172: "And even when time is not thus either expressly or impliedly of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, *or* if there has been, in the intermediate periods, a material change in circumstances affecting the rights, interests, or obligations of the parties, *in all such cases* courts of equity will refuse to decree any specific performance upon the plain ground that it would be unequitable and unjust." (*Green* v. *Covillaud,* 10 Cal. 317, 325, [70 Am. Dec. 725].)

Applying the provision of this declaration of the law relating to the material change of circumstances and rights of the parties, it is difficult to see how a court of equity can enforce the performance of a contract to convey real estate calling for a consideration of $1,400 after a default of twenty-eight years, where, upon the face of the proceedings, the property is valued at more than ten times that amount. It would be inequitable to entertain a bill upon such a showing whatever the disability under which the vendor or his successors in interest may have labored during so extended a period. Time is material to the specific performance of a contract, whenever from the change of circumstances a specific performance, such as would answer the ends of justice between the parties, has become impossible. (*Pratt* v. *Law,* 9 Cranch, 456, 494.) Says Chief Justice Marshall: "Between a contract which is unreasonable when made and one which has become so before it can be executed, if the application be made by the person in fault, for the aid of the court against the party who has suffered by his [dis]ability, no clear distinction is perceived." (*Garnett* v. *Macon,* 6 Call, 308, 371, [Fed. Cas. No. 5245].) We are of opinion that there is not a "reasonably decent probability of litigation" on the Fowler bond.

Plaintiff's action, therefore, fails both upon the right to recover the money paid for the option and that sought to be recovered as damages for breach of contract. In respect to the first-mentioned cause of action, we also think the finding of the trial court that it was barred by the statute of limitations is sustained by the evidence. When defendant tendered to plaintiff a good and sufficient deed on March 14, 1904, and plaintiff refused to accept it in execution of the option, and no further time was given within which he might make the payment or accept the deed, the cause of action, if any, accrued and the statute began to run. Plaintiff himself recognized this when he made his demand for the return of his money on March 13, 1904. There being no cloud for defendant to remove from his title, the condition attempted to be made by plaintiff had no existence in fact or in law, and could not serve to toll the statute. This was not a case in which no time was provided for the performance of the contract (*Richter* v. *Union Land Co.*, 129 Cal. 367, 375, [62 Pac. 39]), but one in which there was an express limitation and time was made of the essence of the contract, and if the tender of the deed by defendant on the 14th of March can be construed as a waiver of one day, it could not extend the time within which plaintiff might have commenced his action to recover the money paid by him.

The order denying the motion for a new trial is affirmed.

Allen, P. J., and Shaw, J., concurred.