DOUGLASS, Respondent, vs. RANSOM, Appellant.

*May 12—October 13, 1931.*

442

*Austin J. Baird* of Waukesha, for the appellant.

For the respondent there were briefs by *Jacobson & Malone* of Waukesha, and oral argument by *Marcus A. Jacobson*.

The following opinion was filed June 22, 1931:

FOWLER, J.. The appellant's claims may be summarized as that the court erred in finding that (1) the abstract furnished does not show a merchantable title; (2) the contract is free from fraud; (3) the plaintiff has at all times been able and willing to perform his part of the contract; (4) the reasonable cost of perfecting the title and completing an abstract is $150; (5) in entering judgment as rendered; and (6) in not receiving testimony of witnesses that the title shown by the abstract is merchantable.

As to (2), (3), and (4) we will only say that it appears to us that these findings are amply supported by the evidence and that no good purpose would be served by discussion of them.

(1) The failure to show freedom from tax liens was of itself sufficient to render the title not merchantable. 57 A. L. R. 1403 and cases cited. While it is doubtless true that the abstract would have been extended to show the payment of the 1926 tax had this been asked for and no other objection had been made to the abstract by the plaintiff, the fact remains that the abstract was not so extended. A receipt showing payment of the tax on January 25, 1927, was received in evidence, but the contract provided that a "merchantable abstract" should be furnished and this implies that an abstract should be furnished which showed a merchantable title. *Russell v. Ives,* 172 Wis. 123, 178 N. W. 300. The abstract should have further shown such condition of the probate proceedings of the husband's estate as to free the premises from possible lien of an inheritance tax and judgments on claims filed. 57 A. L. R. 1404, 1408, and cases cited. It is not the fact that the grantor has good

title, but the appearance of that fact of record, that renders a title merchantable. *Stack v. Hickey,* 151 Wis. 347, 138 N. W. 1011. As the plaintiff was not bound to accept the title until an abstract was furnished showing that no liens existed and that none would arise in progress of the probate proceedings, and was not bound to pay or tender the portion of the purchase price not covered by the check until such an abstract was furnished, there was no breach of the contract by the plaintiff when the defendant declared that he had breached it and for that reason declared the deal ended. The retention of the returned check without reply to defendant's letter might perhaps be construed as acquiescence by plaintiff in the defendant's position that the deal was ended but for the filing of the *lis pendens* on the day following its receipt and the commencement of the action. This negatives such acquiescence and shows intent by plaintiff not to waive his rights under the contract. The defendant could not by her declaration that the contract was ended and her return of the check when no right to take such action existed, impose a duty on the plaintiff to send back the check to her or make other repudiation of her attempt at termination of the contract than commencement of suit to enforce it.

It is contended by appellant that the plaintiff can only assert such defects of title as were covered by his objections first made to the defendant as ground for holding the title not marketable. But the condition of the estate as shown by the abstract was included in the objections presented. And we do not see that any element of estoppel exists to prevent plaintiff from now asserting any valid objection that may exist. Had the defendant, relying on the assumption that no further objections to the title were made by the plaintiff, taken action to remove the defects to which objection was made and tendered an abstract showing their removal and brought action for performance by the plaintiff, she would then be in position to invoke an estoppel or claim

a waiver of other defects. *Chandler v. Gault,* 181 Wis. 5, 10, 194 N. W. 33.

(5) The court concluded in effect that a judgment in a *quia timet* action to remove clouds from the title was necessary to render the title merchantable and gave the plaintiff the option to abate $150 from the purchase price to cover the cost of prosecuting such an action and accept the title shown by the abstract or require the defendant to prosecute such an action to judgment. The defects mentioned in (1), while sufficient to render the title unmerchantable, would not require prosecution of such an action to remove them, as their removal would be accomplished merely by bringing the abstract down to date. We must therefore determine whether the other defects claimed render the title unmarketable.

What constitutes a marketable or merchantable (the terms are synonymous) title to real estate has been considered by this court in several cases. The general rule applicable is not difficult of statement, but it is often not easy to determine whether a particular defect falls within the rule. In the opinion of Mr. Justice PINNEY in *Harrass v. Edwards,* 94 Wis. 459, 464, 69 N. W. 69, it is stated that although a title is good, if there is reasonable doubt as to its validity it is not marketable. A material defect is such as will cause a reasonable doubt and just apprehension in the mind of a reasonably prudent and intelligent person, acting upon competent legal advice, and prompt him to refuse to accept it. If such doubt exists as to make the title subject to probable attack by legal proceedings, or depends upon facts which can only be established by parol evidence if attack is made upon it in such proceedings, the title is not marketable. In *Stack v. Hickey, supra,* it is stated that a marketable title is one that can be held in peace and quiet; not subject to litigation to determine its validity; not open to judicial doubt. An exhaustive note on the subject citing a multitude of cases

is contained in 57 A. L. R. 1282, without adding much to the statements by this court above given. A marketable title must be salable without abatement of price and salable on the face of the record. *McLaughlin v. Nelson,* 113 Neb. 308, 202 N. W. 871; *Weaver v. Richards,* 144 Mich. 395, 108 N. W. 382. The chancery rule in England is that a merchantable title is one "which at all times and under all circumstances may be forced upon an unwilling purchaser." *Pyrke v. Waddingham,* 10 Hare, 1.

Of the clouds considered by the trial court as necessary to be removed by *quia timet* action we need mention only two classes to support its conclusion. Mortgages are defectively satisfied of record and discrepancies exist in the names of grantors and title-holders, illustrated as where one takes title as John J. Jones and conveys as J. J. Jones. Like discrepancies between the names of the one who should satisfy and the one who executes the satisfaction of mortgages constitutes the defect in most of the satisfactions. The mortgages defectively satisfied are eleven in number, ranging in date of execution from 1840 to 1870. In one of them, dated 1854, there is no similarity between the name of the mortgagee and the one who executed the satisfaction, and no assignment of the mortgage is shown. This leaves the mortgage unsatisfied of record.

It is contended by the appellant that the defects in the mortgage satisfactions are immaterial because the statute of limitations has run against foreclosure. It has been held that an unsatisfied mortgage, although the lapse of time is such as to make it probable that the statute of limitations has run against foreclosure of it, renders a title unmarketable, because the running of the statute may have been tolled by agreement or by payments. *Rath v. Wilgus,* 110 Neb. 810, 195 N. W. 115, and cases cited; *Austin v. Barnum,* 52 Minn. 136, 53 N. W. 1132. This appears to us a reasonable rule and we adopt it.

The discrepancies in names referred to in connection with deeds and mortgages we also consider as resulting in non-merchantability of title. Counsel for appellant cites 4 Thompson, Real Property, § 2971, to the effect that similarity of names is sufficient evidence of identity of a party in a chain of title in absence of evidence casting doubt upon his identity. This is the rule in cases of ejectment, trespass, and the like where the plaintiff is proving title. The question there is one of good title, actual title, not of merchantable title. Where merchantable title is the issue the title must be such, on the face of it, as to preclude question of identity. The trial court considered that the discrepancies here involved constituted non-merchantability, and it has been held by courts whose decisions are entitled to great respect that where the trial court has held a title unmerchantable an appellate court will not force the title upon a purchaser although of opinion that the title is sufficient. *Cook v. Dawson,* 29 Beav. 123; *Collier v. McBean,* 12 Jur. N. s. 1; *Hamilton v. Buckmaster,* L. R. 3 Eq. 323. It is also to be considered as matter of common knowledge that some examiners of title are more particular and technical than others about passing titles. The examiner for the plaintiff refused to pass the title here involved as merchantable. Acting upon competent legal advice is stated in the *Harrass Case, supra,* as one element to be considered in determining merchantability. That competent counsel have refused to pass a title as merchantable has been held to render it not merchantable. *Howe v. Coates,* 97 Minn. 385, 107 N. W. 397. Of like effect is *Hymers v. Branch,* 6 Mo. App. 511; *Marlow v. Smith,* 2 P. Wms. 198; *Pyrke v. Waddingham, supra; Larson v. Thomas,* 51 S. Dak. 564, 215 N. W. 927. As we are of opinion that non-merchantability of title results from the defects mentioned it is not necessary to discuss other alleged defects in the title.

It is contended that the title might have been sufficiently cleared by permitting satisfaction of the mortgages to be made by court order under sec. 235.60, Stats.; that this would have been a cheaper method than a *quia timet* action; and that the court erred in requiring the more expensive procedure. Assuming the statutory method might have been followed as to mortgages, it does not follow that the court erred in requiring the *quia timet* action. The statutory order satisfying the mortgages would not have affected the defects resulting from discrepancies in the names of the grantors in conveyances other than mortgages.

It is also contended that the court erred in not permitting the clouds on the title resulting from discrepancies in the names of grantors to be removed by the filing of affidavits of identification. It is sufficient to say upon this point that no such affidavits were offered in evidence. Evidence was received that as to one such case of discrepancy in a mortgage satisfaction an affidavit could be procured and the witness testified that he believed that affidavits could be procured in all such cases. But this was manifestly not the best evidence of the fact, if it be a fact, and incompetent. Objection to such proof was properly interposed and should have been sustained.

The defendant contends generally that the equities of the case are in favor of the defendant and that specific performance should have been denied because the defendant was willing to correct the title by proceeding under sec. 235.60, Stats., to procure an order satisfying the mortgages and procuring the recording of affidavits properly identifying the parties to the title. Had the defendant done this and continued the abstract to show the corrections before demanding full payment of the purchase price, we would have an entirely different situation. This might well have resulted in a finding that these defects did not render the title unmer-

chantable. But merely being willing to do this did not so result. The trial court considered the general equities to be in favor of the plaintiff. Whether specific performance will be decreed under given circumstances "rests in the sound discretion" of the trial court. *Woldenberg v. Riphan,* 166 Wis. 433, 166 N. W. 21. The court exercised its discretion and we cannot say its discretion was unsound. The defendant's hasty attempt to declare the deal at an end smacks more of desire to avoid the contract than to perform it.

It is urged that the judgment is erroneous because it does not fix the date upon which the plaintiff should have made payment and thus fixed the time when interest on the purchase price should begin to accrue. The plaintiff delivered his check for $1,000 and the defendant did not refuse to accept it because it was not cash. This operated as a tender of the down payment and prevented the accrual of interest on that amount. The contract expressly provided that payment of the remaining $6,600 should be made "as soon as merchantable abstract was furnished." As no such abstract has been furnished, the time for payment of the $6,600 has not yet arrived and will not arrive until defendant furnishes such an abstract or the plaintiff under the judgment elects to abate $150 and accept the title shown by the abstract furnished. By fixing the rental value of the premises of which the defendant has retained possession, it would seem that the trial court considered this value the equivalent of all that the defendant was entitled to for non-use of the purchase price or otherwise and it does not appear that this view worked injustice to her.

It is urged that time is the essence of the contract and performance should be denied for non-payment of the purchase price within two weeks, because of the notation at the foot of the contract, "I hereby agree to give possession of

this property within two weeks from date, provided the balance of the purchase price, $6,600, is paid on delivery of the deed. If said purchase price is not paid on delivery of the deed, as above provided, this entire contract shall become void and of no effect." This notation obviously contemplates that the "merchantable abstract and warranty deed" provided for in the body of the contract would be furnished within the two-weeks period referred to in the note. If a deed was tendered, as defendant claims, a merchantable title was not. The express provision contained in the body of the contract controls the time of payment, and that time has not yet arrived as above shown.

(6) The defendant produced several attorneys in good standing, experienced in the examination of titles, who had examined the abstract in evidence, to whom he put the questions (a) whether the title shown by the abstract is merchantable, and (b) whether in such abstracts the plat can be considered as the root of the title and examination be safely started from that point and prior defects disregarded. Objections to these questions were sustained on the ground that the opinions of the witnesses were incompetent and immaterial.

As to (a) it is plain that the matters stated in (1) rendered the title unmerchantable as matter of law and that no prejudicial error resulted from refusal of the court to permit that question to be answered. It has been squarely held that the question of marketability of a title is one of law and that the opinion of witnesses is not receivable. *Brackenridge v. Claridge,* 91 Tex. 527, 44 S. W. 819; *Evans v. Gerry,* 174 Ill. 595, 51 N. E. 615; *Murray v. Ellis,* 112 Pa. St. 485, 3 Atl. 845; *Moser v. Cochrane,* 107 N. Y. 35, 13 N. E. 442; *Reed v. Sefton,* 11 Cal. App. 88, 103 Pac. 1095; *Winter v. Stock,* 29 Cal. 408. In *Bradway v. Miller,* 200 Mich. 648, 167 N. W. 15, the question is held to be one

of law, so that an admission of unmarketability by counsel is not binding upon the court although it might naturally affect the court's judgment.

As to (b) we are of opinion that the objection was properly sustained. The question put was not whether the title was marketable notwithstanding defects antecedent to platting, which would be the material point aimed at if the point were material. We are perhaps not called upon to determine whether if a question to this point had been put, objection to it would have been made and the objection would have been sustained. However, it is not entirely beside the case to say that it may be the custom of examiners of platted lands in some localities not to go back of the plat, and if so titles would doubtless be acceptable locally upon approval of a local examiner. But it would not follow that the title would be acceptable when passed upon by examiners elsewhere, and we consider that to be marketable a title must be marketable generally as distinguished from locally. Marketability is not established by the fact that any particular examiner has passed it. If as stated in (1) a marketable title is one "which at all times and under all circumstances may be forced upon an unwilling purchaser," to constitute marketability the title must be "salable" not only in Waukesha but in Milwaukee and elsewhere in the state.

Some other contentions are made by appellant's counsel, all which have received attention. So far as these are not covered by what we have said, they are considered as not requiring especial mention.

*By the Court.*—The judgment is affirmed.

A motion for a rehearing was denied, with $25 costs, on October 13, 1931.