## BERNARD REALTY CO. v. UNITED STATES.

### Civ. A. No. 4584.

United States District Court
E. D. Wisconsin.
June 30, 1950.

Maurice Weinstein, Milwaukee, Wis., for plaintiff.

Timothy T. Cronin, U. S. Atty., Milwaukee, Wis., for defendant.

TEHAN, District Judge.

Plaintiff here is seeking to recover an amount of money which it paid as taxes and interest following an assessment of the Commissioner of Internal Revenue. There is no dispute as to any of the facts forming the basis of plaintiff's claim and so the parties submitted these facts to the court in a stipulation which reads as follows:

"1. The plaintiff is a Corporation, duly organized under the laws of the State of Wisconsin, having its principal place of business at 425 West Wisconsin Avenue, Milwaukee, Wisconsin, and is in the business of owning, operating and dealing in real estate.

"2. On December 18, 1947 and some time before and after Frank J. Kuhl was the Collector of Internal Revenue for the District of Wisconsin, duly appointed and acting in such capacity, but that at the time of the commencement of this action and up to the present time is not in office nor acting in such capacity.

"3. George J. Schoeneman is the Commissioner of Internal Revenue of the United States and that D. W. Reynolds is the Internal Revenue Agent in the State of Wisconsin and in charge of supervision and investigation and duties of tax returns, both of whom are employes and representatives of the Defendant.

"4. On or about April 1, 1940, the plaintiff entered into a written agreement entitled 'Land Contract' with 425 West Wis-

consin Avenue, Inc., a Wisconsin corporation for the purchase of improved real estate located in the City of Milwaukee. A copy of said land contract is attached hereto as Exhibit A. At the time the land contract was entered into, the property was subject to a duly recorded mortgage, a copy of which is attached hereto as Exhibit B.

"5. Pursuant to the terms of the land contract, the plaintiff made the following payments:

| "April 1, 1940 | Contract Price | $325,000.00 |
| | Down Payment | 50,000.00 |
| | Balance Due | 275,000.00 |
| "1941–1942 | Payments | 10,000.00 |
| "December 31, 1942 | Balance Due | 265,000.00 |
| "1943 | Payments | 14,583.30 |
| "December 31, 1943 | Balance Due | 250,416.70 |
| "1944 | Payments | 17,499.96 |
| "December 31, 1944 | Balance Due | 232,916.74 |

"6. The average daily balance due under the land contract during 1943 was $259,038.83.

"7. The average daily balance due under the land contract during 1944 was $241,913.43.

"8. On or before March 15, 1944, the plaintiff filed its corporate excess profits tax return for the calendar year 1943, disclosing a tax liability of $17,544.06, which amount was paid in quarterly installments.

"In computing its excess profits tax, the plaintiff took a credit for invested capital and in computing its invested capital, the plaintiff included therein as borrowed invested capital the sum of $129,519.42, representing fifty percent of the average daily balance due during 1943 under the land contract.

"9. On or before March 15, 1945, the plaintiff filed its corporate excess profits tax return for the calendar year 1944, disclosing a tax liability of $13,724.07, which amount was paid in quarterly installments.

"In computing its excess profits tax the plaintiff took a credit for invested capital, and in computing its invested capital, the plaintiff included therein as borrowed invested capital the sum of $120,956.72, representing fifty percent of the average daily balance due during 1944 under the land contract.

"10. On audit of the plaintiff's excess profits tax returns for 1943 and 1944, the Commissioner disallowed the credit claimed by plaintiff for borrowed invested capital in the sum of $129,519.42 for the calendar year 1943 and in the sum of $120,956.72 for the calendar year 1944, and as a result, the following adjustments were made by the Commissioner with respect to plaintiff's tax liability:

| "Year | Deficiency Assessment | Over Assessment | Net Additional Tax |
|---|---|---|---|
| "1943 Income | | 1,396.21 | |
| "1943 Excess Profits | 6,246.04 | | |
| "1944 Income | | 1,422.62 | |
| "1944 Excess Profits | 4,455.06 | | |
| | $10,701.10 | $2,818.83 | $7,882.27 |

"11. As a result of said additional tax adjustments, the Collector of Internal Revenue demanded from plaintiff the sum of $7,853.13 computed as follows:

| "Net Additional Tax | | $7,882.27 |
|---|---|---|
| "Less 1943 post-war credit | | 2,079.01 |
| | | 5,803.26 |
| "Plus Deficiency Interest | | |
| "For 1943 | $1,322.42 | |
| "For 1944 | 727.45 | 2,049.87 |
| "Total Additional Tax and Interest | | $7,853.13 |

"12. Said sum of $7,853.13 was paid by the plaintiff to the Collector of Internal Revenue, FRANK J. KUHL, in accordance with said demand, on December 18, 1947.

"13. Thereafter on December 29, 1947, the plaintiff filed with the Collector of Internal Revenue at Milwaukee, Wisconsin a claim for refund, pursuant to Section 322 of the Internal Revenue Code on Form 843, which form was prescribed by the Commissioner of Internal Revenue, demanding a refund for the year ending December 31, 1943, in the sum of $5,847.65, and that Exhibit X attached to the plaintiff's complaint is a true and correct copy of the claim filed with the Collector of Internal Revenue, and that on the same day the plaintiff filed with the Collector of Internal

808

Revenue at Milwaukee, Wisconsin, a claim for refund, pursuant to Section 322 of the Internal Revenue Code on Form 843, which form was prescribed by the Commissioner of Internal Revenue, demanding a refund for the year ending December 31, 1943, in the sum of $3,759.89, and that Exhibit Y attached to the plaintiff's complaint is a true and correct copy of the claim filed with the Collector of Internal Revenue, and that both of said claims were acknowledged by the Collector of Internal Revenue on December 30, 1947.

"14. Although more than six months have elapsed since the filing of the claims for refund herein referred to, the defendant has neither rejected said claims nor paid them."

The question presented to the court is whether the indebtedness of a purchaser under a contract for the sale of land is the type of indebtedness which can be included in a taxpayer's computation of borrowed invested capital for the purpose of determining his excess profit tax for the years 1943 and 1944. The statute controlling this matter is sec. 719(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 719(a) (1), which provides:

"(a) The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

"(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *."

The plaintiff contends, in the alternative, that the land contract is either a note, or that the transaction can be considered the equivalent of a mortgage or trust deed or bond arrangement or else that the transaction, whatever it is called, is of the class of transactions included within those defined by the statute.

The government contends that the land contract is not a note, and also and alternatively, that either the plaintiff cannot now claim that the land contract is a mortgage, or deed of trust, or bond because no such issue was raised in the claim for refund, or if such claims may now be raised, that the land contract is not any one of the enumerated forms.

In Wisconsin the land contract is a well recognized device used in the sale and purchase of real estate. The rights and obligations of a purchaser and vendor under such agreements have been spelled out by numerous court decisions. It is well established that the obligation of the purchaser to pay the agreed price is definite. Should the purchaser default on his payments, the vendor may, if he chooses, sue the purchaser for the unpaid balance of the purchase price and obtain a judgment for this amount plus accrued interest. Estate of Greeneway, 236 Wis. 503, 295 N. W. 761, 136 A.L.R. 1174. As a general rule, in the absence of misrepresentation or fraud, a purchaser cannot prior to the time fixed in the contract for conveyance complain that the vendor's title is defective or encumbered. There are exceptions to this rule, as there are to most rules. The commonest exception is that when the nature of the defect in title is such that the vendor cannot acquire the title agreed upon, then the purchaser may rescind the contract prior to the time of conveyance. Kons v. Pallange, 247 Wis. 492, 19 N.W.2d 911. The purchaser may have specific performance of the contract if he is not in default. Douglass v. Ransom, 205 Wis. 439, 237 N.W. 260. Thus the contract gives the purchaser a very substantial interest in the realty.

Our problem is to determine whether the debt evidenced by the land contract meets the requirements of sec. 719(a) (1) of the Internal Revenue Code. This statute requires first that there be an indebtedness. The question of what the statute means by the term "indebtedness" was discussed in the case of Aetna Oil Co. v. Glenn, D.C., 53 F.Supp. 961, 964. The court there said: "The definition of the term includes the essential elements of the existence of an actual liability which must in all events be payable either at that time or at some future time; in other words, an unconditional obligation to pay." This court agrees with that holding.

It is the position of the government that the indebtedness created by this contract is not an unconditional obligation. The government contends that this agreement was one of conditional sale. While it is proper to state that the indebtedness required by sec. 719 is an unconditional one, it is well recognized that any obligation arising by reason of a contract may be subject to defenses. The law excuses nonpayment of an obligation in some cases where the promisor can show fraud, or mistake, or failure of consideration. Thus, when we look to the obligation created by the land contract here under consideration, we should properly compare the unconditionality of the obligation created by it with that created by a note for example. When such a comparison is made, it seems to demonstrate that the obligation here incurred in an unconditional one in the accepted sense of the word. The government contends that because the contract requires that the vendor satisfy and have discharged a mortgage, maintain and finally convey good title, and keep the taxes currently paid, these covenants make the obligation of the plaintiff conditional. Having in mind the law of Wisconsin, as enunciated in the case of Kons v. Pallenge, supra (i. e. that in the absence of misrepresentation or fraud, a purchaser cannot, prior to the time fixed in the contract for conveyance, complain that the vendor's title is defective or incumbered), this court fails to see how these provisions of the contract made the obligation of the plaintiff conditional. It is true that if for some reason there is a defect of the vendor's title, such that he can not acquire the good title agreed upon, the plaintiff would be justified in rescinding the contract. However, such a situation would constitute a failure of consideration and likewise justify nonpayment of a note had the plaintiff made an outright purchase of the property and given only a note as evidence of the indebtedness. 66 C.J. 555. Thus, it is the court's conclusion that the obligation is an unconditional one which may be considered an indebtedness within the meaning of the statute.

The second requirement of the statute is that the indebtedness be evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust. A review of the cases indicates that the requirement of this part of the statute has not been clearly defined. Some courts have been inclined to give the statute a liberal reading and include within its meaning obligations evidenced by writings which were in essence of the type enumerated by the statute. Brewster Shirt Corp. v. Comm. of Internal Revenue, 2 Cir., 159 F.2d 227. Other courts have seen fit to give the statute a close reading and hold that it is limited to the specific type of writing named. Consolidated Goldacres Co. v. Comm. of Internal Revenue, 10 Cir., 165 F.2d 542. Since this section of the statute has apparently not been interpreted by the Court of Appeals of this Circuit, this court feels that it is free to choose between these shades of thought. The holding of the Brewster Shirt case appeals to this court as being a proper construction of the statute. The court feels that it is especially true in this instance where there is involved an instrument, the name of which, while it has become a word of art in Wisconsin, is not generally recognized throughout the country as defining a specific form of real estate transaction. It is not surprising that Congress should fail to include "land contract" in the list of the enumerated evidences of indebtedness when it is a fact that the words "land contract" do not have the same sort of generalized meaning throughout the United States that the other words used do have. The court believes it is proper to examine the legal relationship created by the document and see if it is not then perhaps the equivalent of one of the enumerated types of evidences of indebtedness.

In Wisconsin the land contract is commonly used to finance the purchase of real estate in those instances where the vendor is willing to carry the financing and the purchaser is unable (or unwilling) to make a substantial down payment. It is a financing arrangement which is more favorable to the vendor than mortgage financing since

the remedies available to the vendor include strict foreclosure, which is not available to a mortgagee, and the cost and time interval involved in foreclosing a land contract is generally less than in the case of a mortgage. Thus, the fact that one is a purchaser under a land contract rather than a mortgagor is usually not one of choice but one of economic necessity.

In Wisconsin the relation of the parties was described by the courts in early cases as that of equitable mortgagor and mortgagee. This doctrine was oft repeated and became well founded. Button v. Schroyer, 5 Wis. 598; Winslow v. Crowell, 32 Wis. 639; Landon v. Burke, 36 Wis. 378; Church v. Smith, 39 Wis. 492; Northrup v. Trask, 39 Wis. 515; Superior Consolidated Land Co. v. Nichols, 81 Wis. 656, 51 N.W. 878. It has never been reversed.

 Considering the position of the purchaser under a land contract and the indebtedness he bears, which is evidenced by the land contract, the court feels that it is wholly proper to hold that for the purposes of sec. 719 of the Internal Revenue Code this particular land contract is the equivalent of a mortgage and that the indebtedness may therefore be included in a computation of "borrowed capital".

One further point remains to be considered. The government has contended that the plaintiff may not now claim that the land contract is a mortgage since he did not do so in his claim for relief. The rule in this regard was explained in the case of United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 377, 75 L.Ed. 1025. The court there said that a purpose of the requirement was to aid in an orderly administration of the revenue. In that instance the court held that "the statute is not satisfied by the filing of a paper which gives no notice of the amount or nature of the claim for which the suit is brought, and refers to no facts upon which it may be founded."

In this case the plaintiff's claim set out fully the complete facts of the situation. In one sentence of the claim plaintiff asserts that the contract is by its terms a note. In the following paragraph plaintiff states: "Inasmuch as this is an obligation evidenced by the contract that it is, it comes within the statute and was properly included as borrowed capital, and the Revenue Agent erred in disallowing same."

The court feels that such a claim sufficiently stated the grounds of plaintiff's objection. The issue in this case is a very narrow one, i. e. whether the indebtedness evidenced by this land contract could be considered as borrowed capital. In such a situation where plaintiff in his claim for refund sets forth the complete facts and then states that the land contract constitutes a note, this does not prevent his subsequent recovery on another legal theory based on the same grounds. Wunderle v. McCaughn, D.C., 38 F.2d 258; Warner v. Walsh, D.C., 24 F.2d 449. In this instance the plaintiff was not estopped from proceeding in this action on the ground that the land contract constituted a mortgage.

Counsel for the plaintiff will prepare findings of fact, conclusions of law and a form of judgment and present them for settlement on ten days' notice.